COMMONWEALTH OF PENNSYL-
VANIA, Appellant (at 1951)

v.

Dominick JOSEPH, Appellee (at 1909).

COMMONWEALTH OF
PENNSYLVANIA,
Appellee

v.

Dominick JOSEPH, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 18, 2003.

Filed April 15, 2004.

Michael A. Sprow, Asst. Dist. Atty., Harrisburg, For Com.

Jack A. Meyerson, Philadelphia, for Joseph.

Before: TODD, BENDER and BECK, JJ.

BECK, J.:

¶ 1 In these two appeals [1] following appellant Dominick Joseph's convictions for criminal solicitation to commit rape, involuntary deviate sexual intercourse and related offenses, we consider whether the trial court had the authority to impose a suspended sentence. We also address evidentiary issues related to the entrapment defense and Joseph's additional claims of trial error. We vacate and remand for resentencing.

¶ 2 In the summer of 2001, the Pennsylvania Attorney General's Office (AGO) set up an online sting operation aimed at apprehending people who seek to have sexual contact with children. Detective Dennis Guzy, of the AGO's child exploitation unit, placed an advertisement on a Yahoo club site using the screen name "luvlittleones."

---

1. Defendant/appellant Joseph and the Commonwealth filed separate appeals. In his appeal, Joseph raises multiple claims of trial court error in connection with his convictions. In its appeal, the Commonwealth asserts that the trial court's imposition of a suspended sentence is improper. We shall address all issues raised in both appeals in this single Opinion. Throughout the Opinion, we refer to Joseph as appellant.

His ad stated that he was interested in "forbidden love" and sought "family fun." Appellant, a citizen of India in the United States on a temporary work visa, responded to the advertisement under the name Harry Carter. The trial court opinion described the communication, via e-mail, between appellant and Guzy, as well as their ultimate meeting:

> In an early email, Detective Guzy, as luvlittleones, specified he was part of a couple that was interested in "family fun with young love." He explained that he had three children, including girls 12 and 9, and a boy 7, all of whom "are full participants." In emails that followed, [appellant] indicated he was new to this type of young love, sought guidance, and was "very much interested in this life style." In a November 6 email, [appellant] expressed his desire to have family love with a mother and daughter, "especially the daughter's beautiful cookie." In a November 9 email, [appellant] detailed the role-playing he sought, including that he would play the mother's boyfriend and that the mother would introduce him to the older daughter in her cheerleading outfit. He qualified that since this was his first time, he was nervous about it and would be just happy "watching and playing." Later emails clarified [appellant's] desire for the older girl and not the 9–year–old. On November 14, [appellant] indicated he wanted the daughter to perform a "hand job/blow job" on him. [Appellant and Guzy] thereafter worked out an arrangement to meet at a Harrisburg hotel on December 6. On November 28, [appellant] suggested that he didn't want to rush into anything and that they just have a "meet and greet" session involving modeling and photos with the girls. Detective Guzy reassured him that there was time to do everything as planned. On December 4, [appellant] wrote that he had to cancel due to work obligations. In response, Detective Guzy questioned whether [appellant] was "legit or just off on some fantasy trip at our expense," and suggested another date. [Appellant] responded December 5, that he never meant to build up expectations which is why he had suggested the meet and greet session. He nevertheless agreed to look for another meeting date. Detective Guzy, on December 5, wrote that he was tired of "phonies" and that if [appellant] were "really into this scene," they could meet that Saturday (December 8); "if not, then fine too." [Appellant] agreed to take the train into Harrisburg [from his New Jersey residence] and meet at a Best Western hotel. Detective Guzy later rescheduled to Saturday, December 15.

> On December 15, [appellant] met Detective Guzy in the hotel parking lot. Detective Guzy asked what it was [appellant] wanted, and [appellant] reiterated he wanted the older girl to perform a hand job/blow job, and that he would perform oral sex on her. Detective Guzy then motioned to Detective Michael Proper, who was providing surveillance, whereupon he approached and both Detectives identified themselves.

> According to Detective Guzy, [appellant] was not placed under arrest, but agreed to voluntarily accompany them to the police station. Once there, [appellant] waived his rights and provided a written statement to police. [Appellant] confessed to using the Harry Carter alias and email address and to corresponding with luvlittleones, including sending the emails described above. He agreed that he traveled to Harrisburg with the intention of receiving and performing oral sex with a 12–year–old girl.

Trial Court Opinion, 4/16/03, at 2–3.

¶ 3 Following a jury trial in September 2002, appellant was convicted of seven

counts of solicitation to commit the following offenses: rape of a person under 13 years of age, statutory sexual assault, involuntary deviate sexual intercourse with a person under 13 years of age, aggravated indecent assault of a person under 13 years of age, indecent assault of a person under 13 years of age, indecent exposure, and corruption of minors. In addition, appellant was found guilty of one count of criminal use of a communication facility.

¶ 4 At his sentencing hearing, appellant offered the testimony of an attorney who was an expert in immigration law. The witness testified that appellant was subject to deportation as a result of his felony convictions and could provide no defense against deportation proceedings, which would commence only after his prison sentence expired. Initially, the trial court imposed an aggregate sentence of three to six years in prison. In a post-sentence motion, appellant sought suspension of his sentence on the condition that he would agree to immediate deportation to India. In support of his request, appellant relied on a psychological report made part of the record at sentencing in which the examiner stated that appellant did not fit the pattern of a pedophile. Appellant asserted that his deportation would accomplish the objectives of punishment and, further, that the suspended sentence would spare the taxpayers of Pennsylvania the cost of incarceration.

¶ 5 The trial court granted appellant's request and issued the following order:

> AND NOW, this 13th day of December 2002, upon consideration of Defendant's Motion to Modify Sentence, imposed November 18, 2002, and the Commonwealth's Answer thereto, said Motion is granted and defendant's sentence is suspended. Defendant's sentence is suspended with the understanding that the defendant, an Indian citizen, will voluntarily accede to the commencement of deportation proceedings by the INS, which defendant will not oppose.* Should the defendant fail to honor his commitment to accept deportation, which is the foundation of his Motion and request for relief, this court reserves the authority to lift the suspension.

> ___

> * The INS has lodged a detainer against Defendant at his current residence, SCI Camp Hill.

Trial Court Order, dated 12/13/02.

¶ 6 This appeal followed. We begin by addressing appellant's allegations of trial error. His first two claims concern the court's evidentiary rulings during cross-examination of Detective Guzy. The admission or exclusion of evidence is reserved to the trial court's discretion, as is any determination on the scope and limits of cross examination; absent an abuse of that discretion or error of law, we will not disturb the trial court's rulings. *Commonwealth v. Nolen,* 535 Pa. 77, 634 A.2d 192, 195 (1993).

■ ¶ 7 At the very start of Guzy's cross examination, defense counsel sought to question the detective about whether he was aware that appellant had no prior criminal record. The Commonwealth objected to this line of questioning, claiming it was irrelevant. The trial judge ruled in the Commonwealth's favor and the inquiry ceased.

¶ 8 Appellant argues that the evidence he sought to introduce was relevant to his defense of entrapment. Entrapment is an affirmative defense and is defined by statute:

**Entrapment**

(a) **General rule.**-A public law enforcement official or a person acting in cooperation with such an official

perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

(1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

**(b) Burden of proof.-**... [A] person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment.

18 Pa.C.S.A. § 313.

■ ¶ 9 Appellant insists that he should have been permitted to question Detective Guzy about whether "Harry Carter" had a prior record in order to establish that Guzy's tactics constituted outrageous conduct warranting a finding of entrapment. However, the law is clear that a defendant's prior record has no bearing on whether police conducted themselves properly. The burden is on the defendant to establish entrapment and the inquiry focuses on the conduct of police, not the predisposition of the defendant. *Commonwealth v. Phillips*, 439 Pa.Super. 428, 654 A.2d 591, 594 (1995).

■ ¶ 10 The test with regard to police conduct is an objective one. *Commonwealth v. Lebo*, 795 A.2d 987, 993 (Pa.Super.2002). "Merely affording the opportunity, through police artifice and stratagem, for the commission of a crime by a person who already has the requisite intent is not entrapment." *Commonwealth v. Johnson*, 448 Pa.Super. 42, 670 A.2d 666, 670–71 (1996). Rather, the defense of entrapment is "aimed at condemning certain impermissible conduct which ... falls below standards ... for the proper use of governmental power." *Id.* at 670 (citations omitted).

■ ¶ 11 While at one time the predisposition of a defendant may have been relevant in an entrapment case, it is no longer significant:

> Thus, the test for entrapment has shifted in emphasis from a consideration of a particular defendant's readiness to commit crime, a subjective test, to an evaluation of the police conduct, an objective test, to determine whether there is a substantial risk that the offense will be committed by those innocently disposed. *To determine whether entrapment has been perpetrated in any particular case, therefore, the inquiry will focus on the conduct of the police and will not be concerned with the defendant's prior criminal activity or other indicia of a predisposition to commit crime.*

*Commonwealth v. Weiskerger*, 520 Pa. 305, 554 A.2d 10, 13 (1989) (emphasis supplied).

¶ 12 Appellant's record, or lack thereof, simply was not relevant in this case.[2]

**2.** That is not to say that a defendant's criminal background (and law enforcement's awareness of it) is irrelevant in all cases where entrapment is raised. The *Weiskerger* court noted the facts in *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), wherein entrapment was established because of law enforce-

ment's "persistent resorts to sympathy directed at a recovering drug addict, which overcame the defendant's initial refusal to procure drugs for a government informant." *Weiskerger*, 520 Pa. at 315 n. 1, 554 A.2d at 15 n. 1. The facts of this case are materially different. Detective Guzy placed an ad on a public access internet site and received a re-

There was no error in denying appellant the opportunity to cross examine Guzy on this issue.

■ ¶ 13 Appellant next claims that the trial court improperly limited his cross-examination of Guzy by not allowing him to ask the detective about how and why he chose the language he used in his correspondence with appellant. In an e-mail dated November 7, 2001, Guzy asked appellant to explain precisely what he wanted to do. Appellant argues that questioning Guzy about the words used in the e-mail, and the specificity requested of appellant, tended to establish entrapment, *i.e.*, that the conduct of police was improper.

¶ 14 In its opinion, the trial court explained that it cut off the questioning on this topic once appellant asked Guzy for a legal conclusion about the effect of his language. We agree with the trial court that precluding such questioning at that point was proper. Further, we note that appellant was permitted and in fact took the opportunity to question Guzy about how and why the e-mails to appellant were drafted:

Q: Okay. And in the November 7 e-mail you asked for more description from Mr. Joseph, did you not, stating what he wrote is ["]kind of general["]?

A: Yes.

Q: Okay. And the reason for that is so you have one of the necessary elements for solicitation, isn't it?

A: No. The reason for that is I wanted to know specifically what sexual act if any the Defendant wished to have incurred [sic] with a preteen child.

Q: Who doesn't exist?

A: Who doesn't exist.

Q: Well, but you would agree with me that you certainly could not validly charge Mr. Joseph with solicitation unless you got the degree of specificity you requested, correct?

A: Mr. Joseph was arrested for what he said on the day of the meeting when he said he indicated -

Q: Agent, please answer my question. N.T. 9/10/02 at 94–95.

¶ 15 The trial court terminated this line of questioning once counsel and Guzy began to disagree as to the basis for the arrest. We find no error by the trial court. Appellant was afforded an adequate opportunity to question Detective Guzy on this issue. In addition, appellant was permitted to lay a foundation for his entrapment defense, which ultimately was rejected by the jury.

■ ¶ 16 Appellant next claims that the trial court erred in denying his request for a mistrial when the prosecutor referred to entrapment case law in her closing argument. A prosecutor's comments require a new trial only where the unavoidable effect of such comments would be to prejudice the jurors by forming in their minds fixed bias and hostility such that they could not weigh the evidence objectively. *Commonwealth v. Faulkner*, 528 Pa. 57, 595 A.2d 28, 38 (1991), *cert. denied*, 503 U.S. 989, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992). The trial court's determination is subject to an abuse of discretion standard. *Id.*

¶ 17 The record indicates that the prosecutor told the jury that the court would explain the law of entrapment and then

___

sponse from appellant, who used an alias. Even if we were to assume that Detective Guzy would have been able to ascertain appellant's identity (and, therefore, his criminal background) under these circumstances, the fact remains that Guzy was able to make contact with appellant only after appellant contacted Guzy to inform him he was interested.

stated: "And in fact, there [are] cases that the Commonwealth has researched prior to even doing these types of operations." N.T. 9/11/02 at 177. Appellant objected to the prosecutor's statement, claiming they constituted improper legal conclusions. The trial court denied the request for a mistrial, but indicated that it would instruct the jury that the only law it was to follow was that given to it by the court.

¶ 18 Thereafter, during the charge, the court instructed the jurors that the lawyers' statements were not to be considered testimony or evidence and, further, that the proper manner in which to proceed was to listen and apply the law as stated by the court. Under these facts, we cannot agree with appellant that the prosecutor's single statement about case law warranted a mistrial. Further, as the trial court noted, any possible harm was cured by the court's instruction.

¶ 19 Appellant's final claim is that the trial court erred in refusing to instruct the jury on the defense of renunciation. The trial court is required to instruct the jury on any defense for which there is support in the record, and its refusal to give an instruction is subject to an abuse of discretion standard. *Commonwealth v. DeMarco*, 570 Pa. 263, 809 A.2d 256, 260 (2002).

¶ 20 Renunciation as a defense to solicitation is set out in the statute:

It is a defense that the actor, after soliciting another person to commit a crime, persuaded him not to do so or otherwise prevented the commission of the crime, under circumstances manifesting a complete and voluntary renunciation of his criminal intent.

18 Pa.C.S.A. § 902(b).

¶ 21 It is difficult to understand how appellant would be entitled to a renunciation instruction when he appeared in the hotel parking lot on the date and time agreed upon and reiterated his request to have sexual contact with a twelve-year-old girl he believed Detective Guzy could provide. In support of renunciation, appellant relies on the fact that prior to the meeting he: 1) discontinued electronic contact with Guzy for a time; 2) told Guzy that he would be content to "watch and play" at first; and 3) cancelled (but rescheduled) meetings with Guzy.

¶ 22 Although all of these things occurred over the course of appellant and Guzy's internet communication, the fact remains that appellant followed through with the plan to meet the child and engage in a sexual liaison of his own design. The trial court's refusal to instruct the jury on renunciation was proper.

¶ 23 Based on our analysis set out above, we conclude that appellant has raised no issues warranting appellate relief. We proceed then to address the Commonwealth's claim that the trial court's suspended sentence is improper.

¶ 24 The Sentencing Code provides six possible sentencing alternatives:

1) an order of probation;

2) a determination of guilt without further penalty;

3) partial confinement;

4) total confinement;

5) a fine;

6) intermediate punishment.

42 Pa.C.S.A. § 9721(a).

¶ 25 The law is clear that an indefinitely suspended sentence is not among these alternatives and so is illegal. *Commonwealth v. Khorey*, 347 Pa.Super. 171, 500 A.2d 462, 465 (1985) (relying on *Commonwealth v. Duff*, 414 Pa. 471, 200 A.2d 773 (1964)); *Commonwealth v. Hamilton*, 339 Pa.Super. 1, 488 A.2d 277, 281 (1985). It is the uncertainty surrounding

such sentences, and the disorder they can engender, that prompts their prohibition. "An indefinitely suspended sentence is not a sanctioned sentencing alternative. Moreover, it is as true now as it was when *Duff* was decided, that an indefinitely suspended sentence violates 'true principles of probation' and causes confusion · where none should exist." *Commonwealth v. Ferrier*, 326 Pa.Super. 331, 473 A.2d 1375, 1378 (1984).

¶ 26 Appellant argues that the sentence imposed by the court here is not indefinitely suspended, but rather is a legal, appropriate sentence under the facts.· He relies on two cases wherein this court held that what appeared to be a suspended sentence was instead lawful.

¶ 27 In *Commonwealth v. Duffy*, 452 Pa.Super. 130, 681 A.2d 219 (1996), the defendant was "ordered to serve ninety days incarceration, but the sentence was suspended and [the defendant] was directed to undergo court-ordered alcohol and drug counseling." *Id.* at 220. The district justice set court dates for the defendant to appear for two review hearings, the second to be held in December 1994. The Superior Court interpreted the district justice's order as extending the probationary period to December 1994. The court's order provided that in the event the defendant was not complying with the counseling, the prison term would be reimposed. At the December 1994 hearing before the district justice, the defendant was deemed non-compliant and sent to prison.

¶ 28 In *Commonwealth v. Harrison*, 264 Pa.Super. 62, 398 A.2d 1057 (1979), the defendant was sentenced to one and one-half years in prison, but the court suspended his sentence on the condition that he enroll in and complete a drug rehabilitation program. In addition, the defendant was required to report to a probation officer. When the defendant was terminated from the treatment program for disciplinary reasons, the court reimposed the prison sentence.

¶ 29 In both *Duffy* and *Harrison,* this court held that the suspended sentences purported to have been imposed by the lower court were actually sentences of probation. This was clear from the conditional nature of the sentences, as well as the continued supervision provided by the court. But in this case there is no continued supervision of appellant. Although the court reserved to itself the authority to "lift the suspension" in the event appellant fails to "honor his commitment to accept deportation," the order does not make appellant subject to continued supervision by the court.[3] This case is not like *Duffy* or *Harrison;* the order here cannot be deemed an order of probation.

¶ 30 We are not unaware of the reasoning of the trial judge, who noted that appellant likely would be subject to INS custody while he awaited deportation. Clearly, the trial court hoped that deportation might occur earlier if appellant was not subject to a prison sentence. The court noted that the cost of housing appellant in prison for the entire term was approximately $177,000.00. Although the cost to Pennsylvania taxpayers is a compelling consideration, we are bound by precedent to consider the nature of the court's order, not its reasons in support

3. Under the court order it is questionable as to whether the court retains jurisdiction to sentence appellant once INS assumes jurisdiction over appellant. Furthermore, we note that there was no agreement for appellant, his attorney or the INS to report to the court on appellant's deportation status. Finally, while noting that appellant would likely remain in INS custody until deported, the court nonetheless observed that he had a chance, though remote, of obtaining bail. Trial Court Opinion, 4/16/03, at 10.

thereof. Therefore, the question for this court is whether the trial court imposed an indefinitely suspended sentence, which is improper under *Duff* and *Ferrier*, or whether the trial court imposed a suspended sentence that was in effect an order of probation, which is proper under *Harrison* and *Duffy*. For the reasons set forth above, we conclude that the order here falls into the former category. It is an indefinitely suspended sentence that simply is not recognized as a sentencing alternative under the Sentencing Code. As a result, it is illegal and cannot stand. *Khorey*; *Hamilton*.

¶ 31 Judgment of sentence vacated; matter remanded for resentencing at the discretion of the trial court. Jurisdiction relinquished.