**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Chad Allen SASSE, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 6, 2006.
Filed April 5, 2007.

---

Alexander H. Lindsay, Jr., Butler, for appellant.

William T. Fullerton, Assistant District Attorney, Butler, for Commonwealth, appellee.

BEFORE: MUSMANNO, BENDER and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Chad Allen Sasse appeals the judgment of sentence entered on December 8, 2005, in the Court of Common Pleas of Butler County, following his conviction for third-degree murder and related offenses. Upon review, we affirm.

¶ 2 The relevant facts and procedural history of this case are as follows: On the evening of December 23, 2004, Appellant met with his ex-wife, Ruby Matthews, in the parking lot of a business located in Middlesex Township, Butler County, to effect a custody change of their child. Ms. Matthews' paramour, Randall Raida was also present at the custody exchange. When Ms. Matthews arrived at the exchange, Appellant thrust their child into her arms. Thereafter, Appellant attempted to discuss a child support matter with Ms. Matthews. Ms. Matthews declined to discuss the matter with Appellant, and he struck her in the head, knocking her to the ground.

¶ 3 Mr. Raida came to Ms. Matthews' aide and knelt beside her to check on her well-being. After ascertaining her condition, Mr. Raida attempted to halt Appellant from leaving the scene by placing a hand on his shoulder. Appellant turned toward Mr. Raida, armed with a pistol. A struggle ensued between the two men, and, during the course of the struggle, Appellant managed to hold Mr. Raida in place and shoot him in the head several times. Mr. Raida fell to the ground, dead, and Appellant fired a final shot into Mr. Raida's chest.

¶ 4 Appellant and Ms. Matthews called 911 after the shooting, and Officer Randall Davidson of the Middlesex Township Police Department arrived at the scene. Officer Davidson patted Appellant down, handcuffed him, and placed him in his police cruiser. Appellant identified himself and told Officer Davidson that the other people present at the scene were his ex-wife and her boyfriend, who Appellant had just shot. Appellant stated that the pistol he used to shoot Mr. Raida was in his vehicle. At trial, Officer Davidson de-

scribed Appellant as cooperative with Officer Davidson's instructions.

¶ 5 Appellant was arrested and transported to the Middlesex Township Police Department headquarters, whereat, he was advised of his constitutional rights. Appellant executed a written waiver of his constitutional rights and provided a narrative of his activities leading up to the shooting. Appellant's version of events contended that he was attacked by Mr. Raida after his confrontation with Ms. Matthews and that he fired at but missed Mr. Raida when he ran toward Appellant. Appellant also stated that he purchased the pistol used in the shooting because he felt that he needed the gun for protection due to his employment as a liquor store clerk. Appellant also acknowledged that he had voluntarily signed himself into the Butler Memorial Hospital mental health unit, but he provided no other details regarding his stay. Thereafter, on February 25, 2005, Appellant was charged with criminal homicide[1] and carrying a firearm without a license.[2] On that same day, the Commonwealth filed a notice of aggravating circumstances.

¶ 6 Appellant waived arraignment and, thereafter, filed a motion for mandatory discovery, a motion to quash the Commonwealth's notice of aggravating circumstances, and a notice of insanity defense or mental infirmity defense. The notice of insanity or mental infirmity defense indicated that Appellant was awaiting a mental examination of Appellant by Stuart Burstein, M.D., a psychiatrist, and that several other unnamed witnesses would testify regarding Appellant's mental state. In response, the Commonwealth filed an answer to Appellant's notice of insanity or mental infirmity defense and a motion for additional time to disclose reciprocal witnesses to be presented to rebut Appellant's insan-

ity defense. The Commonwealth filed the motion for additional time because, other than Dr. Burstein, Appellant's notice of insanity or mental infirmity defense did not disclose any witness supporting Appellant's insanity or mental infirmity defense.

¶ 7 The trial court conducted a status conference on April 5, 2005, whereat it addressed, *inter alia*, Appellant's notice of insanity or mental infirmity defense and the Commonwealth's motion for additional time to disclose reciprocal witnesses. At the time of the status conference, the parties agreed, and the trial court ordered, that Appellant would file an amended notice of insanity or mental infirmity defense after the completion of Dr. Burstein's report and that the Commonwealth would have 7 days after that date to disclose its reciprocal witnesses.

¶ 8 Appellant filed an amended notice of insanity or mental infirmity defense on May 23, 2005, which included Dr. Burstein's report. Dr. Burstein's report did not indicate specifically that Appellant was legally insane at the time of the shooting but that he "lacked the reasoning capacity that would have been necessary to understand the nature and quality of his act, or to whatever extent he did understand that, he did not perceive his act as wrong." *See* Dr. Burstein's report, 5/3/2005, at 8. Dr. Burstein's report also contains the conclusion that "[a]t the time of the incident[,] [Appellant] lacked substantial capacity to appreciate the wrongfulness of his conduct or [to] conform his conduct to the requirements of the law." *Id.*, at 8. The Commonwealth, in turn, obtained its own psychiatric evaluation of Appellant from Bruce Wright, M.D., and the Commonwealth provided Dr. Wright's report to Appellant.

¶ 9 Prior to trial, the Commonwealth filed motions *in limine* that sought to ex-

---

**1.** 18 Pa.C.S.A. § 2501(a).

**2.** 18 Pa.C.S.A. § 6106(a)(1).

clude from trial the following evidence: (1) Dr. Burstein's report; (2) evidence regarding Ms. Matthew's character and propensities; and (3) evidence regarding Mr. Raida's propensities and character. Appellant also filed a motion *in limine* that challenged the admissibility of the crime scene photographs of Mr. Raida's body and of the recording of Ms. Matthews' 911 call.

¶ 10 The trial court conducted oral argument on the motions on September 16, 2005, and precluded the Commonwealth from utilizing the taped 911 call of Ms. Matthews in its case-in-chief. The trial court deferred its decision on the issues of Dr. Burstein's report, the crime scene photographs of Mr. Raida, and the character evidence of Ms. Matthews and Mr. Raida pending further oral argument to be conducted following jury selection on September 19, 2005. Following jury selection and further oral argument, the trial court addressed the admissibility of the crime scene photography, holding that certain photographs would be admitted and others not admitted into evidence. Thereafter, the trial court ruled that Dr. Burstein's testimony (and report) would not be admissible for purposes of demonstrating Appellant's insanity at the guilt phase of trial. However, the trial court permitted Dr. Burstein to testify during the guilt phase of trial for purposes of demonstrating Appellant's *bona fide* belief that he was in imminent danger at the time of the shooting. The trial court permitted Appellant to present Dr. Burstein's testimony regarding Appellant's mental health during the penalty phase of trial.

¶ 11 Lastly, with respect to the character traits and propensities of Ms. Matthews and Mr. Raida, the trial court ruled that Appellant could present evidence relating only to the following: (1) Ms. Matthews' association with people of violent propensities; (2) Mr. Raida's alleged sta-

tus as a drug dealer; and (3) Mr. Raida's abuse of alcohol and drugs.

¶ 12 The case proceeded to trial on September 22, 2005. After the Commonwealth began presentation of its case-in-chief, Appellant, at side bar, presented a supplement to Dr. Burstein's report to the trial court and to the Commonwealth. Thereafter, Appellant requested the trial court to revisit its ruling concerning Dr. Burstein's testimony in order to permit him to testify regarding the conclusions contained in the supplemental report, *i.e.*, that Appellant was legally insane at the time of the shooting. The trial court denied Appellant's motion.

¶ 13 Trial concluded on September 28, 2005, whereupon the jury found Appellant guilty of third-degree murder and carrying a firearm without a license. Thereafter, on December 8, 2005, the trial court sentenced Appellant to an aggregate term of incarceration of 20 years, 9 months to 44 years of incarceration. Appellant filed a timely notice of appeal to this Court on January 4, 2006. On January 6, 2006, the trial court ordered Appellant to file a concise statement of matters complained of on appeal within 14 days. Appellant filed the concise statement in a timely fashion. In response to Appellant's concise statement, the trial court authored an opinion on March 3, 2006.

¶ 14 Appellant presents the following issues for our review:

A. Whether [Appellant] was entitled to present supporting evidence and testimony of defense expert Dr. Burstein regarding [Appellant's] defense of legal insanity at [Appellant's] capital murder trial?

B. Whether [Appellant] was entitled to present the supporting evidence and testimony of defense expert Dr. Burstein regarding Dr. Burstein's

supplemental expert report on [Appellant's] defense of legal insanity?

C. Whether certain relevant evidence which was probative of [Appellant's] state of mind on the night of the incident should have been excluded?

D. Whether [Appellant] should have been permitted to present evidence and present argument to rebut the Commonwealth's prejudicial statements which put [Appellant's] mental capacity to understand the wrongfulness of his actions at issue during closing argument?

E. Whether the trial court should have charged the jury concerning the verdicts of insanity and guilty but mentally ill, where the jury could have found, from the evidence presented at trial, that [Appellant] was legally insane or guilty but mentally ill of third-degree murder?

Appellant's brief, at 5.

¶ 15 Appellant argues first that the trial court erred by excluding the expert testimony and report of Dr. Burstein regarding Appellant's defense of legal insanity. As with all evidentiary matters, we review the trial court's decision to determine if the trial court abused its discretion by excluding the evidence from trial. *See Commonwealth v. Brown*, 700 A.2d 1310, 1320 (Pa.Super.1997).

¶ 16 We begin with the observation that, generally, all relevant evidence is admissible. Pa.R.E. 403. However, relevant evidence may be excluded if its probative value is outweighed by the danger of un-fair prejudice. *Id.* Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence more or less probable than it would be without the evidence. *Id.* In order to present the defense of insanity [3] or mental infirmity at trial, Pa.R.Crim.P. 568(A)(1) requires a defendant to file a notice of insanity or mental infirmity defense with the trial court and serve same on the Commonwealth. Likewise, Pa.R.Crim.P. 568(A)(2) requires a defendant who wishes to utilize an expert report to prove his insanity at the time of the offense to file the expert report with the trial court and serve same on the Commonwealth. Appellant complied with these requirements, and the Commonwealth sought to exclude Dr. Burstein's report on the basis that it was not relevant to the issue of whether Appellant was insane at the time of the offense. Specifically, the Commonwealth asserted that the opinions in Dr. Burstein's report (and his putative testimony at trial) were not admissible in the guilt phase of trial because the opinions did not "meet the definition of any legally recognized mental infirmity defense under Pennsylvania law, and [were] thus, irrelevant and inadmissible." *See* Commonwealth's motion *in limine*, 9/9/2005, at ¶ 6.

¶ 17 The substance of Dr. Burstein's report indicated that Appellant knew that he shot the pistol at Mr. Raida and that he did so to defend himself because Appellant feared that Mr. Raida possessed a weapon. *See* Dr. Burstein's report, 5/3/2005, at 5. Appellant felt that the situation was "a

**3.** The defense of insanity is codified at 18 Pa.C.S.A. § 315, which states the following:

(a) GENERAL RULE.—The mental soundness of an actor engaged in conduct charged to constitute an offense shall only be a defense to the charged offense when the actor proves by a preponderance of evidence that the actor was legally insane at the time of the commission of the offense.

(b) DEFINITION.—For purposes of this section, the phrase "LEGALLY INSANE" means that, at the time of the commission of the offense, the actor was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if the actor did know the quality of the act, that he did not know that what he was doing was wrong.

matter of life and death" between Mr. Raida and himself. *Id.*, at 5. The basis for Appellant's fear was described by Dr. Burstein in his conclusions regarding Appellant's mental health, which state, in pertinent part, the following:

> At the time of the incident on December 23, 2004, [Appellant] was suffering from paranoia, irrational logic, extreme fear, and marked anxiety as a result of his major depression. The depression had developed in response to the break-up of his marriage, problems with child support, and the irrational or paranoid fear he developed about his and his son's safety. *At the time of the incident, [Appellant] lacked substantial capacity to appreciate the wrongfulness of his conduct or [to] conform his conduct to the requirements of the law.* From his irrational or psychotic standpoint, he was justified in his actions because it was a matter of his killing Mr. Raida or [he] and his son being killed by Mr. Raida. *He lacked the reasoning capacity that would have been necessary to understand the nature and quality of his act, or to whatever extent he did understand that, he did not perceive his act as wrong.*

Dr. Burstein's report, 5/3/2005, at 8 (emphasis added). Nevertheless, Appellant was remorseful about Mr. Raida's death. *Id.*, at 5. A review of the above-stated conclusions indicates that they, in fact, contain phrases that could form a basis for both the defense of insanity and a finding of guilty but mentally ill.[4]

¶ 18 It is clear from Dr. Burstein's report that Appellant suffers from major depression, which the trial court concluded did not constitute a "mental disease" within the meaning of both 18 Pa.C.S.A. § 314 (regarding a finding of guilty but mentally ill) and § 315 (regarding the defense of insanity). This conclusion is supported by our law. *Commonwealth v. Heller,* 369 Pa. 457, 459, 87 A.2d 287, 288 (1952) ("marked depression" constitutes a "far cry" from insanity). Nevertheless, even if we were to assume, *in arguendo,* that psychosis arising from major depression constituted a "mental disease" within the meaning of 18 Pa.C.S.A. §§ 314–15, *see Commonwealth v. Plank,* 329 Pa.Super. 446, 478 A.2d 872, 875 (1984) (to extent that court focuses on disease of mind to excuse act, etiology is irrelevant), Appellant still could not present an insanity defense based on Dr. Burstein's report. *Compare Heller,* at 459, 87 A.2d at 288.

¶ 19 Turning to the opposing statements in Dr. Burstein's conclusions, the statement that "[a]t the time of the incident, [Appellant] lacked substantial capacity to appreciate the wrongfulness of his conduct or [to] conform his conduct to the requirements of the law[,]" connotes that Appellant was, in fact, aware of the nature and quality of his actions but could not appreciate their wrongfulness or conform his actions to the law's requirements, *i.e.*, that

---

**4.** A finding of "guilty but mentally ill" is authorized by 18 Pa.C.S.A. § 314, which states, in pertinent part, the following:

> (a) GENERAL RULE.—A person who timely offers a defense of insanity in accordance with the Rules of Criminal Procedure may be found "guilty but mentally ill" at trial if the trier of facts finds, beyond a reasonable doubt, that the person is guilty of an offense, was mentally ill at the time of the commission of the offense and was not le-

gally insane at the time of the commission of the offense.

> (c) DEFINITIONS.—For the purposes of this section and 42 Pa.C.S. § 9727 (relating to disposition of persons found guilty but mentally ill):
>> (1) *"Mentally ill."* One who as a result of mental disease or defect, lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.

Appellant was guilty but mentally ill. Whereas the second statement, concluding that "[Appellant] lacked the reasoning capacity that would have been necessary to understand the nature and quality of his act, or to whatever extent he did understand that, he did not perceive his act as wrong[,]" supports the defense of legal insanity. *See* 18 Pa.C.S.A. § 315.

¶ 20 Given that Appellant knew that he shot and killed Mr. Raida on the basis of a perceived, though inaccurate, threat, that he felt the situation was "a matter of life and death," and that he was remorseful for his actions, it is clear that Appellant was aware of the nature and quality of his actions on the night of the shooting. These facts, in addition to Dr. Burstein's conclusion that, at the time of the shooting, Appellant lacked substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law, indicate that Dr. Burstein's report was not relevant to proving the defense of legal insanity. *See* 18 Pa.C.S.A. §§ 314–15. It is of no moment that Dr. Burstein also concluded that Appellant "lacked the reasoning capacity that would have been necessary to understand the nature and quality of his act, or to whatever extent he did understand that, he did not perceive his act as wrong[,]" because such conclusion is not relevant in that it is not borne out by the facts set forth previously in Dr. Burstein's report and would not, of itself, be sufficient to prove that Appellant was insane at the time of the shooting. *See, e.g.,* Pa.R.E. 401, 402 (relevant evidence has tendency to make evidence of fact more or less probable; irrelevant evidence is not admissible); *cf. Commonwealth v. Merrick,* 338 Pa.Super. 495, 488 A.2d 1, 4 (1985) (where witness' testimony could not speak sufficiently regarding accused's state of mind at the time of killing, trial court did not err in forbidding witness to testify regarding Appellant's state of mind during killing

but allowing witness to testify regarding other matters). Consequently, we are satisfied that the trial court did not err by excluding Dr. Burstein's report from the guilt phase of trial. As such, Appellant's argument fails.

 ¶ 21 With regard to Dr. Burstein's testimony at trial, Appellant argues essentially that Dr. Burstein should have been permitted to testify regarding Appellant's mental state such that it would show Appellant's lack of capacity to formulate the specific intent to kill required to prove first-degree murder and his inability to act with malice, a necessary element of third-degree murder. Appellant's argument is moot; the jury did not find Appellant guilty of first-degree murder, and, therefore, it is clear that it found that Appellant lacked a specific intent to kill.

 ¶ 22 Appellant's second argument, in reality, claims that the trial court's ruling precluded him from presenting a "diminished capacity" defense or an "imperfect self-defense" defense. A defendant asserting a "diminished capacity" defense attempts to prove that he was incapable of forming the specific intent to kill; if the defendant is successful, first-degree murder is mitigated to third degree. *See Commonwealth v. Legg,* 551 Pa. 437, 444, 711 A.2d 430, 433 (1998). The boundaries of a "diminished capacity" defense are very narrow; psychiatric testimony that addresses mental disorders affecting the cognitive functions of deliberation and premeditation necessary to formulate a specific intent is admissible for the defense of "diminished capacity." *Id.,* at 444, 711 A.2d at 433 (citation omitted). However, psychiatric evidence that a defendant lacked the ability to control his actions or that he acted impulsively (known in other jurisdictions as an "irresistible impulse" defense) is not relevant and inadmissible on the issue of the defendant's specific

intent to kill. *Id.,* at 444, 711 A.2d at 433 (citation omitted). On the other hand, a defense of "imperfect self-defense" exists where the defendant actually, but unreasonably, believed that deadly force was necessary. *Commonwealth v. Marks,* 704 A.2d 1095, 1100 (Pa.Super.1997) (citation omitted). In this case, a defendant is guilty of voluntary manslaughter, not murder. *Id.,* 704 A.2d at 1100.

¶ 23 A review of the record indicates that the trial court permitted Dr. Burstein to testify regarding Appellant's *bona fide* fear of Mr. Raida. Dr. Burstein then did, in fact, testify regarding how Appellant's major depression and anxiety served to create that *bona fide* fear. This type of testimony is supportive of either a "diminished capacity" defense or a theory of "imperfect self-defense." *See Legg,* at 444, 711 A.2d at 433 (describing "diminished capacity" defense); *see also Marks,* 704 A.2d at 1100 (describing "imperfect self-defense" theory). Given that the jury convicted Appellant of third-degree murder and not first-degree murder or voluntary manslaughter, it is clear that they rejected a theory of "imperfect self-defense." *See Marks,* 704 A.2d at 1100. Accordingly, as Dr. Burstein presented testimony that would support either of the above theories, Appellant's argument is without merit and, therefore, fails.

■ ¶ 24 Next, Appellant argues that the trial court erred by excluding Dr. Burstein's supplemental report from the guilt phase of his trial. The trial court excluded this evidence from the guilt phase of trial because it was presented to the trial court (and the Commonwealth) on September 22, 2005, after the Commonwealth had begun presentation of its case-in-chief. Appellant's argument is without merit.

¶ 25 We first observe that Pennsylvania Rule of Criminal Procedure 568(A)(2) requires a defendant who wishes to present an expert report as evidence in support of his insanity defense to file the report not later than the time required for filing an omnibus pretrial motion provided in Rule 579. Clearly, one may not file an omnibus pre-trial motion after trial *has already commenced.* Therefore, the supplemental report was patently untimely, and we are satisfied that the trial court did not err by excluding it from admission into evidence at the guilt phase of Appellant's trial. *See* Pa.R.Crim.P. 568(A)(2).

¶ 26 However, Appellant argues that Dr. Burstein's supplemental report contained only slight elaborations of Dr. Burstein's conclusions regarding Appellant's state of mind, and, therefore, the report was not prejudicial to the Commonwealth. We disagree. Dr. Burstein's supplemental report claims that Appellant suffered from a third mental disease, *i.e.,* psychotic disorder, not otherwise specified (DSM–IV–TR 298.9). Moreover, the supplemental report concluded that Appellant did not know the nature and quality of his actions on the night of the shooting. *See* Dr. Burstein's supplemental report, 9/22/2005, at 1. Clearly, this report was Appellant's attempt at re-asserting evidence supportive of an insanity defense, which defense the trial court precluded because there was insufficient evidence to support an insanity defense. The presentation of this evidence (and defense) at that stage of the proceedings was clearly prejudicial to the Commonwealth, who had already begun presentation of its case-in-chief and had structured its case-in-chief based on the trial court's previous exclusion of Dr. Burstein's first report. *See, e.g.,* Pa.R.E. 403 (trial court may exclude relevant evidence from inquiry if effect of evidence would cause undue prejudice to a party). Accordingly, we are satisfied that the trial court's decision to exclude Dr. Burstein's supplemental report was proper.

■ ¶ 27 Appellant asserts next that the trial court excluded improperly certain evi-

dence that was probative of his state of mind at the time of the shooting. Specifically, Appellant contends that evidence of Ms. Matthews' drug and alcohol abuse, sexual promiscuity, manic depression, and her father's criminal status was relevant to his state of mind on the night of the shooting to demonstrate why he was in fear for his life. Appellant's argument is without merit.

¶ 28 Evidence regarding the character and conduct of a witness is relevant only as it relates to the character for truthfulness or untruthfulness of the witness. *See* Pa.R.E. 608, 609. Further, only evidence of a *pertinent* trait of character is admissible in a criminal case when offered by the accused. *See* Pa.R.E. 404. Ms. Matthews character traits for drug and alcohol abuse, sexual promiscuity, manic depression, and her father's criminal status have no relationship whatsoever to Appellant's fearful state of mind regarding Mr. Raida on the night of the shooting.[5] Rather, their only purpose would be to attempt to paint Ms. Matthews in a negative light at trial and, therefore, to discredit her testimony improperly. Accordingly, we are satisfied that the trial court correctly excluded this evidence. *See* Pa.R.E. 402 (irrelevant evidence not admissible). Consequently, Appellant's argument fails.

¶ 29 Appellant's fourth argument contends that the Commonwealth committed prosecutorial misconduct by referencing Appellant's sanity during its closing arguments. This claim is waived. In order to preserve a claim of prosecutorial misconduct for appeal, a defendant must make an objection and move for a

mistrial. *See Commonwealth v. Jones*, 501 Pa. 162, 460 A.2d 739 (1983). Appellant failed to make either a contemporaneous objection or move for a mistrial *during* the Commonwealth's closing argument; Appellant challenged the statement *after* the Commonwealth's closing argument. As such, the argument is waived, and we dismiss it. *See Commonwealth v. [Samuel] Jones*, 374 Pa.Super. 431, 543 A.2d 548, 550 (1988) (defendant's objection to improper remark by prosecutor must be contemporaneous with improper remark).

¶ 30 Lastly, Appellant asserts that the trial court erred in refusing to charge the jury with regard to the defenses of legal insanity and guilty but mentally ill, despite the fact that sufficient evidence was presented at trial to support these defenses. This argument is without merit.

¶ 31 A trial court must instruct a jury on a defense if the defense was raised properly and supported by the record, and its refusal to give an instruction is subject to an abuse-of-discretion standard of review. *See Commonwealth v. Joseph*, 848 A.2d 934, 941 (Pa.Super.2004) (citation omitted). There was no basis for the trial court to instruct the jury on the defense of legal insanity because, due to the trial court's previous rulings, the defense was not presented. *Id.*, 848 A.2d at 941.[6]

¶ 32 Judgment of sentence affirmed.

¶ 33 BENDER, J. Concurs in the Result.

---

5. Appellant believed Mr. Raida was in a terrorist gang that was "out to get him."

6. Although Appellant does not make an argument regarding a finding of guilty but mentally ill for this issue, we note parenthetically that, in the strictest sense, a jury's determina-

tion of "guilty but mentally ill" is not a defense. *See, e.g., Commonwealth v. Eck*, 439 Pa.Super. 530, 654 A.2d 1104, 1107 (1995). Rather, it is a finding made where an individual is aware of the nature and quality of his criminal actions but, due to a mental disease or defect, is unable to appreciate the wrongful

nature of those acts or conform his actions to the requirement of the law. *See* 18 Pa.C.S.A. § 314. The purpose of the General Assembly in crafting the "guilty but mentally ill" statute was to *limit* the number of persons escaping criminal liability through the use of the insanity defense. *Eck,* 654 A.2d at 1108. Therefore, the "guilty but mentally ill" statute exists to settle the question of whether criminal liability may be imposed on a defendant who *properly presents* evidence that demonstrates that he is mentally ill but, nevertheless, fails to demonstrate that he did not understand the

nature and quality of his actions. *Id.,* 654 A.2d at 1108. In other words, a finding of "guilty but mentally ill" is the outcome of a failed presentation of the insanity defense, but it is not a defense itself. *Id.,* 654 A.2d at 1108. Inasmuch as the trial court was not authorized to instruct the jury on the defense of legal insanity because Appellant did not present the insanity defense properly, the trial court could not instruct the jury on a possible finding of "guilty but mentally ill." *Joseph,* 848 A.2d at 941.