**[J-27-2019]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| TRICIA A. THOMPSON | : | No. 36 WAP 2018 |
| | : | |
| | : | Appeal from the Order of the |
| v. | : | Superior Court entered May 8, 2018 |
| | : | at No. 647 WDA 2017, reversing and |
| | : | vacating the Order of the Court of |
| ASHLEY N. THOMPSON | : | Common Pleas of Clarion County |
| | : | entered February 15, 2017 at No. |
| | : | 2015-D00104 and remanding |
| APPEAL OF: CLARION COUNTY | : | |
| DOMESTIC RELATIONS SECTION | : | ARGUED: April 10, 2019 |


**OPINION**


**JUSTICE DONOHUE**                      **DECIDED: JANUARY 22, 2020**

In this discretionary appeal, we consider whether the Superior Court erred in holding that the suspended sentence imposed upon Appellee, Ashley N. Thompson ("Thompson"), for civil contempt of a child support order is illegal because suspended sentences[1] are not authorized by section 4345 of the Domestic Relations Code, 23 Pa.C.S. § 4345. For the reasons set forth herein, we hold that a suspended sentence is not a legal sanction for contempt of a support order. Thus, we affirm the judgment of the Superior Court.

---

[1] "Suspended sentence" is not defined in the Sentencing Code or Crimes Code. Black's Law Dictionary defines a "suspended sentence" as "[a] sentence postponed so that the convicted criminal is not required to serve time unless he or she commits another crime or violates some other court-imposed condition." *Sentence (suspended)*, BLACK'S LAW DICTIONARY (11th ed. 2019).

# I. Background

We begin with the factual background. In 2015, Thompson placed her two children in the custody of her mother, Tricia Thompson ("Grandmother"). Grandmother subsequently sought child support from Thompson. The Clarion County Domestic Relations Section ("DRS") computed Thompson's child support obligation pursuant to the child support guidelines to be $108 per month. The trial court subsequently entered an order establishing Thompson's child support obligation at that amount. Shortly after the order was entered, however, Thompson fell behind in her payments, and DRS commenced an enforcement action by filing petitions for civil and indirect criminal contempt against Thompson.

Following the adjudication of these petitions, the trial court ordered Thompson to remain current with her $108 monthly support obligation and to pay an additional $30 per month in arrears, for a total monthly payment of $138. Thompson again soon fell behind in her payments. Grandmother thereafter requested that DRS terminate the support case, notwithstanding the arrearages, but DRS declined to do so. On October 11, 2016, the trial court issued an order directing Thompson to continue paying the full amount of $138 per month, to be applied solely to the arrearages. When Thompson again failed to remain current, DRS filed another contempt petition.

On February 14, 2017, prior to the scheduled hearing on this contempt petition, Thompson and her attorney attended a conference with a DRS conference officer. During the conference, the parties executed an agreement ("the Agreement"), in which Thompson admitted that she was in civil contempt of the support order and agreed to stay current with her monthly payments of $138. The Agreement acknowledged that

Thompson had the present ability to pay this amount. The Agreement further provided that if Thompson failed to remain current in her obligation, a bench warrant would be issued for her immediate arrest and she would serve a six-month jail sentence. The Agreement also stated that Thompson waived any right to further hearings in the matter. Thompson confirmed in the document that she had the right to counsel and that she understood all the terms of the Agreement.

Immediately following the execution of the Agreement, the hearing on DRS' contempt petition commenced. The parties presented the Agreement to the trial court and Thompson confirmed on the record that she had read and signed the form, understood her attorney's advice, and consented to the terms of the Agreement. Notes of Testimony ("N.T."), 2/14/2017, at 4-5. Thompson indicated that she was gainfully employed, had the ability to make the $138 monthly payments, would continue to work, and would be able to make such payments in the future. *Id.* at 3. Thompson acknowledged that if she failed to make the payments, she would serve a sentence of six months of incarceration. *Id.*

After the hearing, the trial court issued an order incorporating the terms of the Agreement and providing, in relevant part, as follows:

> [Thompson] admitted to being in civil contempt. [Thompson] is sentenced to [six] months [of] incarceration to be suspended upon the following conditions:
>
> 1. Remain current with paying full monthly support obligation by the last business day of each month, starting in February 2017.
>
> 2. Notify DRS of any change in income, address, or employment within 24 hours.

> Failure to comply with the above conditions will result in a bench warrant being issued for [Thompson's] immediate arrest and incarceration of [six] months, without further hearing. If incarcerated, [Thompson] shall be released upon serving [six] months or acceptable purge conditions.

Trial Court Order, 2/15/2017, at 2.

Thompson subsequently appealed the trial court's order on various grounds. Pertinent to the present appeal, in her Pa.R.A.P. 1925(b) statement of matters complained of on appeal, Thompson argued that the suspended sentence imposed by the trial court is not a statutorily-authorized sanction for civil contempt of a child support order under section 4345 of the Domestic Relations Code. Section 4345, entitled "Contempt for noncompliance with support order," provides as follows:

> (a) General rule. -- A person who willfully fails to comply with any order under this chapter, except an order subject to section 4344 (relating to contempt for failure of obligor to appear), may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:
>
> > (1) Imprisonment for a period not to exceed six months.
> >
> > (2) A fine not to exceed $ 1,000.
> >
> > (3) Probation for a period not to exceed one year.
>
> (b) Condition for release. -- An order committing a defendant to jail under this section shall specify the condition the fulfillment of which will result in the release of the obligor.

23 Pa.C.S. § 4345.

In its ensuing opinion, the trial court initially emphasized that the Pennsylvania Rules of Civil Procedure permit parties to reach an agreement during a conference and to submit that agreement to the court. Trial Court Opinion, 6/7/2017, at 5 (citing Pa.R.C.P.

1910.25-2(c) (providing that "[i]f an agreement is reached at the conference, the conference officer shall prepare a written order in conformity with the agreement for signature by the parties and submission to the court")). The trial court rejected Thompson's argument that it lacked statutory authority to impose a suspended sentence for civil contempt of a support order. It held that a court may impose a suspended sentence in a support case absent specific statutory authority so long as the suspended sentence is not indefinite. *Id.* (citing *Commonwealth v. Ferrier*, 473 A.2d 1375, 1378 (Pa. Super. 1984) (holding that "[a]n indefinitely suspended sentence is not a sanctioned sentencing alternative")). The trial court further reasoned that the suspended sentence imposed was not indefinite, as the arrearages amounted to $1,426.18 and Thompson agreed to pay $138 per month; thus, assuming that Thompson remained current in her obligation, the sentence would conclude in eleven months. *Id.*

The Superior Court reversed. *Thompson v. Thompson*, 187 A.3d 259 (Pa. Super. 2018), *appeal granted*, 195 A.3d 186 (Pa. 2019). The intermediate appellate court agreed with Thompson that trial courts cannot impose a suspended sentence because it is not authorized by section 4345(a), and therefore illegal. *Id.* at 264. In support of this conclusion, the Superior Court cited *Commonwealth v. Joseph*, 848 A.2d 934, 941 (Pa. Super. 2004), which held that an indefinitely suspended sentence is illegal because it is not among the sentencing alternatives enumerated in section 9721(a) of the Sentencing Code. *Id.* The Superior Court reasoned that although *Joseph* involved sentencing in a criminal context, the rationale was instructive in this civil contempt case.[2] *Id.*

---

[2] As noted, the Superior Court recognized that *Joseph* prohibits the imposition of indefinitely suspended sentences and it characterized Thompson's sentence as

DRS filed a petition for allowance of appeal, which this Court granted in order to consider the following issue:

> Did the Superior Court of Pennsylvania err in determining that the suspended sentence imposed by the trial court's February 15, 2017 order was an illegal, indefinitely suspended sentence, rather than a sentence [of] probation, which is a sanctioned punishment under 23 Pa.C.S. § 4345(a)[.]

Order, 10/3/2018.[3]

## II. The Parties' Arguments

DRS contends that the intermediate appellate court's decision has far-reaching adverse effects because it renders illegal all suspended sentences imposed for contempt of a support order. It disagrees with the Superior Court's characterization of Thompson's sentence as indefinitely suspended and argues that the punishment imposed here is effectively a probationary sentence, which section 4345 expressly permits. DRS' Brief at 7. DRS contends that where a suspended sentence is conditional in nature and provides for court supervision, it is a legal sentence of probation, notwithstanding the absence of the term "probation" in the sentencing order. DRS' Brief at 7-9 (citing *Joseph*, 848 A.2d

---

indefinitely suspended. *See Thompson v. Thompson*, 187 A.3d 259, 264 (Pa. Super. 2018). However, the Superior Court did not discuss what constitutes an indefinite suspension, explain its conclusion that Thompson's punishment was an indefinitely suspended sentence, or address the rationale employed by the trial court to reach the contrary conclusion.

[3] Before the Superior Court, Thompson also claimed that the trial court's order violated her due process rights because it provided that she would not be afforded an ability-to-pay hearing prior to incarceration and failed to specify a purge condition that would result in her release from incarceration. The Superior Court agreed with Thompson on this point and found the sentence violated her due process rights. *Thompson v. Thompson*, 187 A.3d 259, 264-65 (Pa. Super. 2018), *appeal granted*, 195 A.3d 186 (Pa. 2019). However, this determination is not implicated in the scope of the issue upon which we granted appeal.

at 942; *Commonwealth v. Duffy*, 681 A.2d 219 (Pa. Super. 1996); *Commonwealth v. Harrison*, 398 A.2d 1057 (Pa. Super. 1979)).

DRS argues that Thompson's sentence meets these qualifications. It points out that the order includes conditions directing her to remain current in her support obligation and to notify DRS of any change in income, address, or employment. DRS emphasizes that these conditions are nearly identical to supervisory conditions authorized by section 9754 of the Sentencing Code, which govern the imposition of an order of probation. DRS' Brief at 11-13 (citing 42 Pa.C.S. § 9754(c)(1), (2), (8), & (9) (enumerating the "specific conditions" that may be imposed on a probationary sentence)). As for continuing court supervision, DRS contends that because the Domestic Relations Section of each court of common pleas has the statutory obligation to accept and monitor child support obligors' payments, it is implied that the DRS will provide continuous court supervision of Thompson's compliance with her support obligation. *See id.* at 10-11 (citing 23 Pa.C.S. § 4325 ("[A]n order of support shall direct payment to be made payable to or payment to be made to the domestic relations section for transmission to the obligee … ."); 23 Pa.C.S. § 4352(a) ("The court making an order of support shall at all times maintain jurisdiction of the matter for the purpose of enforcement of the order and for the purpose of increasing, decreasing, modifying or rescinding the order … .")). Thus, DRS concludes that Thompson's sentence, which was imposed as six months of incarceration, suspended so long as she remains current with monthly support obligations and notifies DRS of any change in income, address, or employment, constitutes a term of probation, which is expressly permitted by section 4345(a)(3). DRS requests that we reject the Superior

Court's "overly broad" pronouncement that suspended sentences imposed for civil contempt of a support order are always illegal. *Id.* at 15.

In contrast, Thompson rejects the notion that her punishment is a de facto sentence of probation because the trial court did not use the term "probation," or explicitly impose court supervision or require her to report to the court. Thompson's Brief at 2-3, 8-9. She refutes DRS' claim that the Superior Court's holding below conflicts with *Joseph*, *Duffy*, and *Harrison*, arguing that those cases involved criminal proceedings with policy considerations distinct from those present in the civil contempt proceedings at issue here. *Id.* at 5-6. Thompson argues that in *Joseph*, *Duffy*, and *Harrison*, the Superior Court did not create a per se rule that a suspended sentence constitutes probation if it is conditional in nature and provides for continued court supervision. Rather, Thompson argues that those cases suggest that courts must analyze the facts of each case to determine whether the trial court intended to impose a sentence of probation. *Id.* at 6. In her case, Thompson maintains, there is no evidence that the trial court intended to sentence her to a probationary term. *Id.* Thompson echoes the Superior Court's characterization of her sentence as an illegal indefinite suspension. Thompson's Brief at 10 (citing *Commonwealth v. Duff*, 200 A.2d 773, 774 (Pa. 1964) (holding that "[t]heories of implied probation and indefinite suspension of sentence are not only contrary to the clearly expressed intent of the legislature, but are also violative of true principles of probation and, as in this case, promote confusion where none should exist")).

### III. Analysis

Resolution of this appeal requires us to determine whether the Superior Court erred by declaring that suspended sentences for contempt of a support order are illegal

because they are not authorized by section 4345(a) of the Domestic Relations Code. This issue presents a question of law, for which our standard of review is de novo and our scope of review is plenary. *Gavin v. Loeffelbein*, 205 A.3d 1209, 1221 (Pa. 2019).

As with all matters of statutory interpretation, we apply the Statutory Construction Act, 1 Pa.C.S. § 1901-1991, which instructs that our inquiry must be focused on ascertaining the intent of the General Assembly in enacting the statute under review. *Id.* In doing so, we give effect to the plain language of a provision whenever that language is clear and free from ambiguity. *Id.*; *see also* 1 Pa.C.S. § 1921(b). While we may not ignore unambiguous language under the pretext of pursuing the spirit of the statute, we must always read the words of a statute in context and not in isolation, and give meaning to every provision. *Loeffelbein*, 205 A.3d at 1221. Our interpretation must not render any provision extraneous or produce an absurd result. *Id.*; 1 Pa.C.S. § 1921(a).

Our interpretative analysis of section 4345(a) is straightforward, as there is no ambiguity in the statute. Section 4345(a) provides three express punishments for a support obligor who is found to be in contempt for noncompliance with a support order: (1) imprisonment for a period of up to six months; (2) a fine of up to $1,000; and (3) probation for a period of up to one year. 23 Pa.C.S. § 4345(a). It unequivocally provides that "[c]ontempt shall be punishable by any one or more" of the three alternatives it sets forth in subsections (a)(1)-(3), and it conspicuously does **not** include language imparting any discretion on a trial court to impose any other form of punishment, including a suspended sentence of incarceration. The omission of language condoning the imposition of suspended sentences speaks volumes, as it effectively prohibits trial courts from imposing them for civil contempt of a child support order. Long established maxims

of statutory construction compel this result. Under the doctrine of *expressio unius est exclusio alterius*, "the inclusion of a specific matter in a statute implies the exclusion of other matters." *See, e.g.*, *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1223 (Pa. 2002). Similarly, this Court has long recognized that as a matter of statutory interpretation, "although one is admonished to listen attentively to what a statute says; one must also listen attentively to what it does not say." *See, e.g.*, *Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.*, 788 A.2d 955, 962 (Pa. 2001). Applying these maxims, if the General Assembly intended to permit trial courts to impose suspended sentences for civil contempt of a child support order, it would have expressly provided for this alternative. **It did not.** We cannot ignore this exclusion. Because suspended sentences are not statutorily authorized as punishment for non-compliance with a child support order, they are illegal and may not be imposed.

In its attempt to save the unauthorized imposition of a suspended sentence, DRS argues that the sentence imposed is not indefinitely suspended, as the Superior Court indicated, but rather, that it is substantively the equivalent of the authorized punishment of probation. It points to *Joseph*, *Harrison*, and *Duffy,* in which the Superior Court deemed punishments imposed as suspended sentences to be sentences of probation. DRS' Brief at 7-8 (citing *Joseph*, 848 A.2d at 941; *Duffy*, 681 A.2d 219; *Commonwealth v. Harrison*, 398 A.2d 1057). In those cases, the Superior Court examined the terms of the punishments to discern whether they contained conditions necessary to qualify as probationary sentences.[4] DRS urges this Court to do the same and undertake an

---

[4] *See Joseph*, 848 A.2d at 941 (finding illegal indefinitely suspended sentence because it contained no explicit provision for continued court supervision); *Duffy*, 681 A.2d at 220-

interpretive reading of the order that would result in a finding that (1) the conditions for the suspension of the sentence are similar to conditions of probation, as allowed by statute, and (2) that the order implies continuous court supervision because sections 4325 and 4352(a) of the Domestic Relations Code require, respectively, that support payments be made through the domestic relations section of a court of common pleas and that the ordering court maintain jurisdiction over the support case for enforcement and modification purposes. *See* DRS' Brief at 10-14.

There is no principled reason for this Court, or any appellate court, to engage in an interpretive analysis of an order entered pursuant to section 4345 in an attempt to save it from a determination that it is invalid. There are three valid sentencing alternatives established by statute, and a suspended sentence of incarceration is not one of them. Appellate courts should not be put to the task of parsing a contempt-of-support order to determine if it can be squeezed into the unambiguous statutory framework. If a court intends to order probation, it must so state. Deference to the legislative mandate, judicial efficiency, and common sense mandate that support orders be clear on their face and compliant with section 4345.

The suspended sentence imposed here is indefinite on its face. *See* Trial Court Order, 2/15/2017.[5] More than half a century ago, in *Duff*, this Court addressed the

---

21 (explaining that sentence was not illegal indefinite sentence where it required defendant to attend counseling and also established definitive dates for review hearings before the court during the counseling); *Harrison*, 398 A.2d at 1058-59 (treating as probation a suspended sentence that required defendant to attend drug treatment program and report to probation officer during the course of the treatment program).

[5] We reiterate that the order at issue here provides only that Thompson "[r]emain current with paying [her] full monthly support obligation by the last business day of each month, starting February 2017[,]" and that Thompson "[n]otify DRS of any change in income,

practice of imposing indefinitely suspended sentences in lieu of a fixed probationary term and the problems these sentences created. There, the defendant was convicted of six crimes. The trial court sentenced him to a twenty-three month term of probation on one of the convictions and it suspended sentence on the remaining five convictions. *Duff*, 200 A.2d at 773-74. After the probationary sentence was completed, the defendant was convicted of another crime. Following this new conviction, the trial court vacated the five suspended sentences and imposed sentences of imprisonment on each. *Id.* at 774. On appeal, this Court acknowledged the long-standing practice of trial courts to suspend sentences without also imposing probation for a set period of time. Nevertheless, we also recognized two statutes that required trial courts to impose fixed periods of probation when they do not impose sentences of incarceration.[6] This Court emphasized that the legislative mandate (requiring fixed periods of probation) could not be ignored, and we declared that the practice of indefinite suspension must cease, as it was contrary to the law. *Id.* In so doing, the Court recognized not only that indefinitely suspended sentences were contrary to legislative intent, but also that their imposition served to "promote confusion where none should exist." *Id.* These words ring as true today as they did

---

address, or employment within [twenty-four] hours." Trial Court Order, 2/15/2017, at 2. There is no indication on the face of the order as to when these obligations would terminate. Notably, the contempt order does not state an arrearage balance or indicate that the support obligation would terminate upon satisfaction of arrearages. For the reasons we have just explained, chief among them deference to the intent of our General Assembly and judicial economy, this Court should not parse the terms of the sentence or look beyond the four corners of the order to find, as advocated by the trial court, that it is not indefinite because it would take Thompson eleven months to satisfy the arrearages, after which the sentence would terminate. *See* Trial Court Opinion, 6/7/2017, at 5.

[6] The Act of June 19, 1911, P.L. 1055 §1, 19 P.S. § 1051 and the Act of August 6, 1941, P.L. 861, 61 P.S. § 331.25. *See Duff*, 200 A.2d at 774.

decades ago in *Duff*, as such sentences continue to sow confusion in the shadow of a clear and unambiguous statute.

Trial courts are bound to follow the letter of the law and impose only one or more of the three punishments identified in section 4345(a) for civil contempt of a child support order. Because the trial court in this case did not impose any of the punishments authorized by the statute, its sentence was illegal.

Accordingly, the decision of the Superior Court is affirmed.

Chief Justice Saylor and Justices Todd, Dougherty and Wecht joined the opinion.

Justice Baer files a dissenting opinion in which Justice Mundy joins.