J-S02022-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
SHAIKEY COPPER :
:
Appellant : No. 328 EDA 2021

Appeal from the Judgment of Sentence Entered March 4, 2019
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004747-2017

BEFORE: OLSON, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY KING, J.: **FILED MAY 4, 2022**

Appellant, Shaikey Copper, appeals *nunc pro tunc* from the judgment of

sentence entered in the Philadelphia County Court of Common Pleas, following

his jury trial convictions for conspiracy, trafficking in minors, involuntary

servitude, statutory sexual assault, unlawful contact with minor, and sexual

exploitation of children.[1] We affirm.

The trial court opinion set forth the relevant facts of this appeal as

follows:

> Complainant M.D. testified that on April 23, 2017, she was
> 14 years old and living with her mother when an argument
> between her and her mother prompted her to leave her
> mother's home. Complainant contacted Appellant on
> Facebook and made arrangements to meet him at his home.
> Complainant was introduced to Appellant by a mutual friend

---

[1] 18 Pa.C.S.A. §§ 903, 3011(b), 3012, 3122.1(a)(1), 6318(a)(1), and 6320,
respectively.

and had known him for about a year. When Complainant arrived at Appellant's house they discussed her disagreement with her mother. Appellant assured Complainant that he would take care of her and she would not have to worry about her problems with her mom. Appellant led Complainant into his house and told her to take her clothes off so he could wash them. Appellant then laid in bed with Complainant, talked some more and proceeded to have sex with her.[2] After the sexual assault, Appellant called an Uber to take Complainant to his sister's house. Appellant told Complainant that she would be dancing with his sister. Appellant told Complainant to tell people that she was eighteen.

Complainant was told Appellant's sister went by the nickname "Bullet."[3] Complainant had never met Bullet before April 23, 2017. When Complainant arrived at Bullet's house she told Bullet she was 14 years old, which seemed to shock Bullet. Complainant started talking to Bullet and Bullet explained that they would not be dancing, but instead would be having "in-calls" and "out-calls." Bullet explained that "in-calls" and "out-calls" refer to having sex with men for money. Complainant told Bullet she did not want to be a part of this and Bullet told Complainant that this was her only option if she wanted to get away from her home situation.

A short while later co-defendant Reggie Fields, known to Complainant as "Jamal," Bullet's boyfriend, came to the house. Fields and Bullet had a conversation and Bullet called Complainant into the room where they were talking. Bullet asked Complainant to perform oral sex on Fields, Complainant left the room without responding, went to the living room and sat on the couch. Fields followed

_____

[2] Appellant was born in May 1998, and he was eighteen (18) years old at the time of his encounter with Complainant. (**See** N.T. Trial, 9/27/18, at 59).

[3] "Bullet" is a nickname utilized by Fantasia Gale, who was also charged with certain offenses in this case. (**See** N.T. Trial, 10/2/18, at 6). Ultimately, Ms. Gale entered a guilty plea and opted to testify against Appellant at trial. (**Id.** at 6-7). At trial, Ms. Gale explained that Appellant is her "God brother." (**Id.** at 7).

Complainant into the living room and asked her to perform oral sex on him. Complainant told Fields "no" and then, feeling she had no other choice, did perform oral sex on him. Complainant slept on Bullet's couch that night.

The following day, another man, Shizz, came to the house. That day, Bullet and Complainant each took an "in-call" at the house. After Complainant's "in-call" she received money and was told to give that money to Bullet. Complainant then was forced to have sexual intercourse with Shizz. Later that day, Complainant, Fields, Bullet, and Shizz relocated to Fields' mother's house. Shizz raped Complainant two more times at Fields' mother's house. While in Fields' car, Complainant encountered co-defendant Angelo Romero, known to her then as "Bum." Fields and Bullet made Complainant get out of Fields' car and into Romero's car. Shizz and two other men joined Complainant in Romero's car and Complainant was forced to perform oral sex on Romero while Shizz attempted to rape her.

Fields, Romero, and other men organized several "out-calls" for Complainant and the money she received she gave to whoever drove her to the call. On one occasion, while on the way to an "out-call," Romero again forced Complainant to perform oral sex on him. From the time Complainant left her mother's house she had nothing to eat or drink except for a glass of orange juice. At some point, Fields and Shizz taunted Complainant by pouring cereal into a dog bowl on the floor and chanting names at her. Complainant eventually left Fields' mother's house, telling Shizz she was going to the corner store. Shizz followed Complainant but she reached the store and borrowed a phone to call for help. Complainant's mother, father and foster mother did not answer her calls but someone in the corner store, seeing her distress, gave Complainant a bus token and she went to the hospital.

Officer Michael Poekert testified that he responded to a radio call for a report of a rape around 4:30 p.m. on April 25, 2017. Officer Poekert went to Temple Hospital and moved Complainant to St. Christopher's Hospital to be examined and interviewed. Complainant was given a rape kit and full physical examination.

(Trial Court Opinion, filed May 10, 2021, at 2-4) (internal citations to the record and footnote omitted).

On June 16, 2017, the Commonwealth filed a criminal information charging Appellant with multiple offenses related to the abuse of Complainant. The Commonwealth subsequently provided notice of its intent to consolidate the cases against Appellant and his co-defendants for trial. Appellant and his co-defendants proceeded to a jury trial on September 25, 2018. On October 5, 2018, the jury convicted Appellant of the aforementioned offenses. On March 4, 2019, the court sentenced Appellant to an aggregate term of fourteen (14) to twenty-eight (28) years' imprisonment, followed by ten (10) years of probation. Appellant did not file post-sentence motions or a notice of appeal.

On March 30, 2020, Appellant timely filed a *pro se* petition pursuant to the Post Conviction Relief Act ("PCRA"), at 42 Pa.C.S.A. § 9541-9546. The court appointed counsel, who filed an amended petition on July 25, 2020. On January 14, 2021, the court reinstated Appellant's direct appeal rights *nunc pro tunc*.[4]

Appellant timely filed a notice of appeal *nunc pro tunc* on January 30, 2021. On February 9, 2021, the court ordered Appellant to file a Pa.R.A.P.

---

[4] Appellant's amended PCRA petition did not include a separate request for the reinstatement of his right to file a post-sentence motion *nunc pro tunc*, and the court did not grant such relief.

1925(b) concise statement of errors complained of on appeal. Appellant

timely filed his Rule 1925(b) statement on February 22, 2021.

Appellant now raises the following issues for our review:

> Whether the evidence presented at trial was sufficient to establish each and every element of the crimes for which Appellant was convicted.

> Whether the jury verdict was against the weight of the evidence.

> Whether the introduction of knowingly false testimony and fabricated evidence constituted prosecutorial misconduct.

> Whether the sentencing court abused its discretion by imposing a sentence that was not based upon the gravity of the violation, the extent of Appellant's record, his prospect of rehabilitation, nor an assessment of the mitigating and aggravating factors as noted in 42 Pa.C.S.[A. §] 9721 of the Sentencing Code.

> Whether the sentencing court abused its discretion by entering a manifestly excessive sentence to such a degree that it establishes evidence of the court's bias or animus toward Appellant.

(Appellant's Brief at 8).

In his first issue, Appellant contends Complainant's testimony

established that she initially reached out to Appellant. Thereafter, Appellant

did not arrange for her to work as an escort. Rather, Appellant attempted to

find work for Complainant as an exotic dancer. Appellant asserts that exotic

dancing does not amount to sexual exploitation, and the Commonwealth did

not present evidence to the contrary. Further, Appellant maintains that he

"had no knowledge of Ms. Gale or the other co-defendant's intention to engage

M.D. in escort work[.]" (*Id.* at 16). Appellant insists that his conspiracy conviction rested solely on the "self-serving testimony" of Ms. Gale, and there was no other evidence that Appellant made any sort of agreement to engage in criminal activity. (*Id.* at 15). Appellant emphasizes that "Ms. Gale testified falsely at trial to implicate Appellant and minimize her own involvement in the criminal acts of the other co-defendants." (*Id.* at 16). Appellant concludes that the Commonwealth presented insufficient evidence to support his convictions. We disagree.

Our standard of review for sufficiency claims is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Tucker*, 143 A.3d 955, 964 (Pa.Super. 2016), *appeal denied*, 641 Pa. 63, 165 A.3d 895 (2017) (quoting *Commonwealth v.*

*Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011)).

The Crimes Code defines the offense of criminal conspiracy as follows:

**§ 903.  Criminal conspiracy**

**(a)  Definition of conspiracy.—**A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1)     agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2)     agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a).

"To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy."

*Commonwealth v. Melvin*, 103 A.3d 1, 42 (Pa.Super. 2014) (citation omitted).

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished.  Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent.  An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities.  Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances

of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

*Id.* at 42-43. "Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act." ***Commonwealth v. Barnes***, 871 A.2d 812, 820 (Pa.Super. 2005).

The Crimes Code defines the offense of trafficking in minors as follows:

**§ 3011.  Trafficking in individuals**

   **(a)   Offense defined.—**A person commits a felony of the second degree if the person:

      (1)   recruits, entices, solicits, harbors, transports, provides, obtains or maintains an individual if the person knows or recklessly disregards that the individual will be subject to involuntary servitude; or

      (2)   knowingly benefits financially or receives anything of value from any act that facilitates any activity described in paragraph (1).

   **(b)   Trafficking in minors.—**A person commits a felony of the first degree if the person engages in any activity listed in subsection (a) that results in a minor's being subjected to sexual servitude.

18 Pa.C.S.A. § 3011(b).[5]

_____

[5] Our legislature amended this statute in 2020, after Appellant's trial. ***See*** Act of Feb. 5, 2020, P.L. 1, No. 1, § 1.

The Crimes Code defines involuntary servitude as follows:

**§ 3012.  Involuntary servitude**

   **(a)   Offense defined.—**A person commits a felony of the first degree if the person knowingly, through any of the means described in subsection (b), subjects an individual to labor servitude or sexual servitude, except where the conduct is permissible under Federal or State law other than this chapter.

   **(b) Means of subjecting an individual to involuntary servitude.—**A person may subject an individual to involuntary servitude through any of the following means:

*     *     *

   (8)   Fraud.

18 Pa.C.S.A. § 3012(a), (b)(8).

The Crimes Code defines statutory sexual assault as follows:

**§ 3122.1.  Statutory sexual assault**

   **(a)   Felony of the second degree.—**Except as provided in section 3121 (relating to rape), a person commits a felony of the second degree when that person engages in sexual intercourse with a complainant to whom the person is not married who is under the age of 16 years and that person is either:

      (1)   four years older but less than eight years older than the complainant; or

      (2)   eight years older but less than 11 years older than the complainant.

18 Pa.C.S.A. § 3122.1(a).  The Crimes Code defines "sexual intercourse" as follows: "In addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required."

18 Pa.C.S.A. § 3101.

The Crimes Code defines unlawful contact with a minor as follows:

### § 6318.  Unlawful contact with minor

**(a)    Offense defined.—**A person commits an offense if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:

(1)    Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

18 Pa.C.S.A. § 6318(a)(1).

The Crimes Code defines sexual exploitation of children as follows:

### § 6320.  Sexual exploitation of children

**(a)    Offense defined.—**A person commits the offense of sexual exploitation of children if he procures for another person a child under 18 years of age for the purpose of sexual exploitation.

\*    \*    \*

**(c)    Definitions.—**As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

"Procure."    To obtain or make available for sexual exploitation.

"Sexual exploitation." Actual or simulated sexual activity or nudity arranged for the purpose of sexual stimulation or gratification of any person.

18 Pa.C.S.A. § 6320.

Instantly, Complainant was born in April 2003.    (***See*** Criminal

Complaint, dated 4/26/17, at 1). At trial, Complainant testified that she had a fight with her mother on April 23, 2017, when she was fourteen (14) years old. (*See* N.T. Trial, 9/28/18, at 22). After the fight, Complainant reached out to Appellant through Facebook. (*Id.* at 24). Appellant told Complainant "he would be there" for her. (*Id.* at 25). Appellant also called for an Uber to take Complainant to his residence. (*Id.*)

Upon arriving at Appellant's residence, Complainant sat and talked with Appellant on his porch. (*Id.* at 28). Appellant told Complainant she "was going to be fine," and "he would take care" of her. (*Id.*) Appellant took Complainant inside the residence, and he told her to take off her clothes so he could wash them. (*Id.* at 29). Thereafter, Appellant and Complainant had vaginal intercourse. (*Id.* at 30).

Here, Complainant's testimony established that she had sexual intercourse with Appellant when she was fourteen years old, and he was eighteen years old. This evidence was sufficient to establish that Appellant committed the offense of statutory sexual assault. *See* 18 Pa.C.S.A. § 3101; 18 Pa.C.S.A. § 3122.1(a). Further, when viewed in the light most favorable to the Commonwealth as verdict winner, Appellant's conversations with Complainant amounted to contacts with a minor for the purpose of committing the sexual offense of statutory sexual assault. *See* 18 Pa.C.S.A. § 6318(a)(1). *See also Commonwealth v. Velez*, 51 A.3d 260 (Pa.Super. 2012) (holding sufficient evidence demonstrated that defendant had unlawful contact with

victim; victim's mother testified that she saw Appellant touching victim's vagina; victim had her pants removed and her knees up; victim would not have been in that position absent contact by defendant, either verbal or physical). Thus, sufficient evidence also supports Appellant's conviction for unlawful contact with a minor.

After having sex with Complainant, Appellant called Ms. Gale. (**See** N.T. Trial, 9/28/18, at 31). After the phone call, Appellant informed Complainant that he was calling for an Uber to take Complainant to Ms. Gale's residence. (**Id.**) Appellant also told Complainant that she would be "dancing" with Ms. Gale. (**Id.**) Although Appellant told Complainant she would be dancing, Ms. Gale indicated that Appellant said something else during their phone call. Significantly, Ms. Gale testified: "[Appellant] called me and said he had some way for me to make fast money and it was from [Complainant]." (**See** N.T. Trial, 10/2/18, at 10). Appellant also told Ms. Gale that Complainant "was a girl and she just wanted to escort." (**Id.**) Appellant indicated that "[h]e just wanted half" of the proceeds that Ms. Gale would make from using Complainant as an escort. (**Id.** at 11). After the phone call, Appellant sent Complainant to Ms. Gale's residence in a ride-share vehicle.[6] (**See** N.T. Trial, 9/28/18, at 32-33; N.T. Trial, 10/2/18, at 12).

Here, Ms. Gale's testimony established that she and Appellant entered

---

[6] Complainant testified that Appellant called for an Uber vehicle, whereas Ms. Gale testified that Appellant called for a Lyft vehicle.

into an agreement to use Complainant as a sex worker. *See Melvin, supra*. Appellant committed an overt act in furtherance of this conspiracy by sending Complainant to Ms. Gale's residence in the ride-share vehicle. *Id.* Thus, sufficient evidence supported Appellant's conspiracy conviction. *See* 18 Pa.C.S.A. § 903. Regarding the remaining offenses, Appellant lured Complainant into prostitution by lying and telling her that she would be working as a dancer. Thus, Appellant utilized "fraud" to subject Complainant to involuntary servitude, and the evidence supported his conviction under Section 3012. Appellant also "transported" Complainant to Ms. Gale, via a ride-share service, for the purpose of subjecting Complainant to involuntary servitude. This evidence supported his conviction for trafficking in minors. *See* 18 Pa.C.S.A. § 3011(b). Finally, Appellant procured Complainant, a minor, to engage in sexual activity at the direction of Ms. Gale and others. This evidence supported Appellant's conviction for sexual exploitation of children. *See* 18 Pa.C.S.A. § 6320. Consequently, Appellant is not entitled to relief for his sufficiency challenge.

In his second issue, Appellant argues that his convictions were against the weight of the evidence. Appellant, however, failed to raise any objection to the weight of the evidence in the trial court. Therefore, Appellant's claim is waived. *See* Pa.R.Crim.P. 607(A) (stating that defendant must raise weight claim with trial judge in first instance). *See also Commonwealth v. Cox*, 231 A.3d 1011, 1018 (Pa.Super. 2020) (stating weight challenge must be

preserved either in post-sentence motion, written motion before sentencing, or orally prior to sentencing; appellant's failure to avail himself of any of prescribed methods for presenting weight issue to trial court constitutes waiver of that claim).

In his third issue, Appellant argues that the Commonwealth committed misconduct through "[t]he prosecutor's knowing and intentional use of perjured testimony from [Ms.] Gale[.]"  (Appellant's Brief at 18).  Again, Appellant failed to raise any objection to the purportedly perjured testimony at the time of trial.  (**See** N.T. Trial, 10/2/18, at 5-94).[7]  Thus, this issue is also waived.  **See Commonwealth v. Sasse**, 921 A.2d 1229, 1238 (Pa.Super. 2007), *appeal denied*, 595 Pa. 706, 938 A.2d 1052 (2007) (reiterating, "In order to preserve a claim of prosecutorial misconduct for appeal, a defendant must make an objection and move for a mistrial").

In his final two issues, Appellant argues that the court imposed unreasonable sentences without considering all relevant factors enumerated in the Sentencing Code.  Appellant also argues that the court's "imposition of a manifestly excessive sentence, combined with its disapproval of Appellant's

_____

[7] During his cross-examination of Ms. Gale, counsel for Mr. Fields played a video of Ms. Gale's prior interview with police. (**See** N.T. Trial, 10/2/18 at 64-74).  Counsel questioned Ms. Gale about statements she made during the interview that were inconsistent with portions of her trial testimony. (**Id.**)  Thereafter, Appellant's attorney continued to question Ms. Gale about inconsistencies between her prior statements and trial testimony. (**Id.** at 79-87).  Despite this questioning, neither Appellant nor his co-defendants made any objection based on prosecutorial misconduct.

statement at the sentencing hearing, establishes the court's bias and animus toward Appellant." (Appellant's Brief at 21). As presented, Appellant's challenges implicate the discretionary aspects of sentencing. *See Commonwealth v. Ahmad*, 961 A.2d 884, 886 (Pa.Super. 2008) (explaining, "A challenge to an alleged excessive sentence is a challenge to the discretionary aspects of a sentence").

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa.Super. 2000). Prior to reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted). "[I]ssues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived." *Commonwealth v. Cartrette*, 83 A.3d 1030, 1042 (Pa.Super. 2013) (*en banc*).

Instantly, Appellant did not raise his claims at the sentencing hearing or file a post-sentence motion preserving the issues in the trial court.[8]  Thus, Appellant's final two issues are waived.  *See **Cartrette, supra**; **Evans, supra**.*  Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/04/2022

---

[8] In his brief, Appellant claims that he preserved his issues in a post-sentence motion.  (*See* Appellant's Brief at 19).  This assertion, however, directly contradicts a claim made in Appellant's amended PCRA petition, where he conceded that "[t]rial counsel failed to file post-sentence motions…." (Amended PCRA Petition, filed 7/25/20, at ¶4).  Likewise, this Court's review of the entire certified record confirms that post-sentence motions were not filed after sentencing or otherwise submitted *nunc pro tunc*.  We repeat that Appellant did not request to file post-sentence motions *nunc pro tunc* in his amended PCRA petition.