**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| THOMAS PAUL HICKS | : | |
| | : | |
| Appellant | : | No. 1271 WDA 2022 |

Appeal from the Judgment of Sentence Entered September 26, 2022
In the Court of Common Pleas of Armstrong County
Criminal Division at No(s): CP-03-CR-0000895-2019

BEFORE: BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: MARCH 4, 2024**

Appellant, Thomas Paul Hicks, appeals from the judgment of sentence entered in the Armstrong County Court of Common Pleas, following his jury trial convictions for rape of a child, statutory sexual assault, involuntary deviate sexual intercourse with a child, incest of a minor, corruption of minors, indecent assault, and endangering welfare of children.[1] We affirm.

The relevant facts and procedural history of this appeal are as follows. Appellant is the biological uncle of O.H. ("Victim").[2] At approximately 7:00 a.m. on August 17, 2019, Appellant drove to the residence where nine-year-

---

[1] 18 Pa.C.S.A. §§ 3121(c), 3122.1(b), 3123(b), 4302(b)(1), 6301(a)(1)(i), 3126(a)(7), and 4304(a)(1), respectively.

[2] Appellant is the brother of Victim's mother, S.H. ("Mother"). Mother is married to Victim's father, C.H. ("Father").

old Victim lived with his parents and younger brother. Appellant entered the residence through the garage and found Victim sleeping on a rocking chair in the living room. Appellant woke Victim, lifted him out of the rocking chair, and led him down a flight of steps into the basement. In the basement, Appellant pulled down Victim's pants and performed oral sex on Victim.

The assault ended a few minutes later when Father called for the boy from upstairs. Victim came up the stairs, returned to the rocking chair, and did not say anything. Appellant came up the stairs shortly thereafter. Appellant told Father that he was in the basement to fix the furnace. Father explained that Appellant should not have come to the house unannounced, and he asked Appellant to leave. Once Appellant left the residence, Father asked Victim why he was in the basement with Appellant. Victim told Father that Appellant "carried me downstairs and was sucking on my penis." (N.T. Trial, 6/9/22, at 72). After discussing the matter with Mother, Father reported the incident to police on August 19, 2019. During a forensic interview on August 20, 2019, Victim recounted the incident from three days earlier. Victim also told investigators that Appellant had been taking him to the basement "for years," and Appellant "does the same thing every time." (Affidavit of Probable Cause, dated 8/22/19, at 1).

On December 3, 2019, the Commonwealth filed a criminal information charging Appellant with various sex offenses. Appellant proceeded to a jury trial on June 9, 2022. At trial, the Commonwealth presented testimony from

Victim, Mother, Father, the forensic interviewer, and an investigating officer. Appellant testified in his own defense, and he presented testimony from his parents (Victim's grandparents). After closing arguments, defense counsel made an oral motion for mistrial. (**See** N.T. Trial, 6/10/22, at 175-80). Specifically, defense counsel claimed that the prosecutor committed misconduct by making unduly prejudicial remarks during his closing argument. The court denied the motion for mistrial before providing its charge and sending the jury to deliberate. (**Id.** at 185-206). Ultimately, the jury convicted Appellant on all counts.

On September 26, 2022, the court sentenced Appellant to an aggregate term of fifteen (15) to thirty (30) years' imprisonment. Appellant did not file post-sentence motions. Appellant timely filed a notice of appeal on October 25, 2022. On October 26, 2022, the court directed Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on November 15, 2022.

Appellant now raises one issue for this Court's review:

> Did the trial court abuse its discretion when it denied Appellant's motion for a mistrial after the Commonwealth engaged in repeated prosecutorial misconduct during its closing arguments, which included statements offering facts not in evidence and injecting issues broader than the guilt or innocence of Appellant under the controlling law?

(Appellant's Brief at 7).

On appeal, Appellant contends that the court should have granted his motion for a mistrial based upon certain statements the prosecutor made

during his closing argument. Specifically, Appellant complains about the prosecutor's references to: 1) Appellant's parents providing information to Appellant's attorney; 2) Appellant's parents' purported duty to protect Victim; 3) a "big family secret" that Appellant molested children; 4) a "family rule" that Appellant should not be left alone with children; and 5) the amount of time it should have taken for Appellant to fix the furnace. Appellant also alleges that the prosecutor should not have called him "creepy Uncle Tom" throughout the closing argument. Appellant maintains that the prosecutor made these statements to introduce facts that were not in evidence, and the statements had the unavoidable effect of prejudicing the jury. Appellant concludes the prosecutor committed misconduct, and the trial court abused its discretion by denying his motion for mistrial. We disagree.

Our standard of review of a claim of prosecutorial misconduct during closing arguments to the jury is whether the trial court abused its discretion. *Commonwealth v. Jones*, 191 A.3d 830, 835 (Pa.Super. 2018).

> [W]ith specific reference to a claim of prosecutorial misconduct in a closing statement, it is well settled that any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered. Our review of a prosecutor's comment and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. Thus, it is well settled that statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict. The appellate courts

have recognized that not every unwise remark by an attorney amounts to misconduct or warrants the grant of a new trial. Additionally, like the defense, the prosecution is accorded reasonable latitude, may employ oratorical flair in arguing its version of the case to the jury, and may advance arguments supported by the evidence or use inferences that can reasonably be derived therefrom. Moreover, the prosecutor is permitted to fairly respond to points made in the defense's closing, and therefore, a proper examination of a prosecutor's comments in closing requires review of the arguments advanced by the defense in summation.

*Id.* at 835-36 (quoting **Commonwealth v. Jaynes**, 135 A.3d 606, 615 (Pa.Super. 2016), *appeal denied*, 636 Pa. 672, 145 A.3d 724 (2016)). "A prosecutor has great discretion during closing argument. Indeed, closing 'argument' is just that: argument." **Commonwealth v. Brown**, 911 A.2d 576, 580 (Pa.Super. 2006), *appeal denied*, 591 Pa. 722, 920 A.2d 830 (2007).

Instantly, the trial court evaluated each of the prosecutor's statements that Appellant now challenges on appeal. The court observed that each statement was based on trial evidence or a proper inference therefrom. Regarding the prosecutor's remark about Appellant's parents providing information to Appellant's attorney (**see** N.T. Trial, 6/10/22, at 156-57), the court noted that Appellant's father admitted to such conduct during the following exchange on cross-examination:

[PROSECUTOR]: … Did you ever tell [Appellant's] attorneys about [Victim] being on medication, about the medicine that you would pick up at Walmart?

[WITNESS]: It might have came up.

[PROSECUTOR]: Why would you need to tell [Appellant's] attorneys about your grandson being on

- 5 -

medicine?

[WITNESS]:        Why?

[PROSECUTOR]:    Yes.

[WITNESS]:        I felt it was important that he knows that … when [Victim] doesn't get his medicine, he can get a little radical.

(*Id.* at 73).

Regarding the prosecutor's statement about Appellant's parents' duty to protect Victim (*see id.* at 167), the court referenced Victim's direct examination testimony about other instances of abuse that occurred on Appellant's parents' property:

[PROSECUTOR]:    … Did [Appellant] always touch you the same way or did he do anything else?

[VICTIM]:        The same way.

[PROSECUTOR]:    It was always he put your private part in his mouth?

[VICTIM]:        Yes.

[PROSECUTOR]:    Did that happen in any other places other than the basement of your house?

[VICTIM]:        Grandma's, outside—Grandma's, in the basement.

[PROSECUTOR]:    What grandma?

[VICTIM]:        My mom's mom.

(N.T. Trial, 6/9/22, at 137). The court explained that "if child abuse happened at the grandparents' house on multiple occasions, and the grandparents had

reason to know about it, then that would arguably give them an additional reason to side with their son, rather than their grandson, the victim." (Trial Court Opinion, filed 12/16/22, at 6).

Regarding the prosecutor's references to a family secret about Appellant's behavior (*see* N.T. Trial, 6/10/22, at 156, 157, 160, 166, 174), the court noted Father's cross-examination testimony about his in-law's penchant for keeping secrets:

> [DEFENSE COUNSEL]: … You had some doubt about whether you should, in fact, go to the police that day, correct?
>
> [FATHER]: There was no doubt in my mind that I should have went to the police earlier, but I didn't because I got a lot of heat from my family about it knowing that they wanted to keep the police out of the matter because everything is a secret in the family.

(N.T. Trial, 6/9/22, at 109).

Regarding the prosecutor's statement about a "family rule" that Appellant should not be left alone with children (*see* N.T. Trial, 6/10/22, at 166), the court cited Mother's direct examination testimony about a 2015 incident where Victim informed her that Appellant had touched him inappropriately. (*See* N.T. Trial, 6/9/22, at 32-35). Significantly, Mother confirmed that the family had an understanding about keeping Appellant away from her children:

> [PROSECUTOR]: Did your parents know about what was brought up back in 2015?
>
> [MOTHER]: Yes.

[PROSECUTOR]: Did they, to your knowledge, know basically the rule of "[Appellant] is not allowed to be alone with the boys?"

[MOTHER]: Yes.

[PROSECUTOR]: Did they follow it?

[MOTHER]: As far as I am aware, yes.

(N.T. Trial, 6/9/22, at 33-34).

Regarding the prosecutor's discussion about furnace repairs (**see** N.T. Trial, 6/10/22, at 150-51, 169-70), the court emphasized Appellant's direct examination testimony that Victim went to the basement, on his own, to watch Appellant repair the furnace. On cross-examination, Appellant explained that he "removed the screws and … was in the process of pulling the panels off" when Father yelled out to Victim. (**Id.** at 120). Appellant estimated that he was in the basement for "15 to 20 minutes" before Father came calling, and Victim was there for "[m]aybe ten minutes." (**Id.** at 119, 120). Defense counsel subsequently referenced the amount of time Appellant spent in the basement during his closing argument:

> Again, we are limited to August 17, 2019 in the morning, Saturday morning at the house in the basement. How you would do that, disassemble the furnace and then in the course of that go upstairs and get a little boy and sexually molest him and then just basically act as if nothing had happened. The Commonwealth needs to—the prosecution needs to address that.

(**Id.** at 133-34).

In response, the prosecutor addressed the timing issue as follows:

It took 10 or 15 minutes to take the panels off an air conditioner? Not the air conditioner, the furnace. … Anyone who has one in your basement, you know what it looks like. There is a couple of panels. They usually each have a couple of bolts or screws in the corners. It is not a big job. It doesn't take much time to pull the panels off and take a look.

(**Id.** at 169). The trial court correctly characterized the prosecutor's comment as an appeal "to the jurors' life experience and common sense in evaluating [Appellant's] testimony about how long the work took." (Trial Court Opinion at 10). When viewed in context, we conclude that the comment also amounted to nothing more than a fair response to the points made in defense counsel's closing. **See Jones, supra**.

Finally, regarding the prosecutor's use of the word "creepy" (**see** N.T. Trial, 6/10/22, at 153, 167), Appellant failed to raise any objection to the prosecutor's use of this word in his oral motion for mistrial. (**See** N.T. Trial, 6/10/22, at 175-80). Thus, this argument is waived. **See Commonwealth v. Sasse**, 921 A.2d 1229, 1238 (Pa.Super. 2007), *appeal denied*, 595 Pa. 706, 938 A.2d 1052 (2007) (reiterating that "[i]n order to preserve a claim of prosecutorial misconduct for appeal, a defendant must make an objection and move for a mistrial").

Based upon our review of the record, we conclude that the remarks at issue constituted comments based on the evidence and fair response to defense counsel's arguments. **See Jones, supra**. Moreover, we agree with the trial court's determination that the prosecutor's language did not have the

unavoidable effect of prejudicing the jury.[3] *Id.* Therefore, Appellant is not entitled to relief on his prosecutorial misconduct claim, and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

FILED: 3/4/2024

---

[3] The court also instructed the jury that closing arguments "are not themselves part of the evidence and you should not consider the attorneys' speeches as evidence." (N.T. Trial, 6/10/22, at 196). We presume the jury followed this instruction. *See Commonwealth v. Faison*, 297 A.3d 810, 828-29 (Pa.Super. 2023) (reiterating that jury is presumed to follow trial court's instruction).