J-A09014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEITH LAMONT BURLEY, JR. | : | |
| | : | |
| Appellant | : | No. 356 WDA 2024 |

Appeal from the Judgment of Sentence Entered September 19, 2023
In the Court of Common Pleas of Lawrence County Criminal Division at
No(s):  CP-37-CR-0000730-2019

BEFORE:  KUNSELMAN, J., NICHOLS, J., and LANE, J.

MEMORANDUM BY KUNSELMAN, J.:                **FILED: June 25, 2025**

Keith Lamont Burley, Jr. appeals *pro se* from the judgment of sentence entered after he was convicted of murder of the first degree, murder of the second degree, two counts of kidnapping, and simple assault.[1]  He presents nine issues for review.  We affirm.

On July 9, 2019, police charged Burley with criminal homicide and other offenses.[2]  At a preliminary hearing on August 29, 2019, the affiant testified over objection as to the allegations of the case, including Burley's identity as the perpetrator.  The criminal homicide, kidnapping, and simple assault charges were held for court.

_____

[1] 18 Pa.C.S. §§ 2502(a), 2502(b), 2901(a)(3), and 2701(a)(1), respectively.

[2] At the onset of the case, the Commonwealth filed a notice of aggravating circumstances.  The Commonwealth later withdrew the filing and prosecuted the case as a non-death penalty case.

While Burley's criminal case was pending, Burley initiated several civil lawsuits. In one, Burley sued Nicole Parra regarding incidents at the Lawrence County Corrections Center. After Parra removed the case to federal court, Burley named eleven other defendants including the trial judge and the District Attorney of Lawrence County. The federal district court stayed the civil proceeding pending resolution of Burley's criminal case. ***Burley v. Parra***, 2021 WL 4594674 (W.D. Pa. Oct. 6, 2021).

In his criminal case, Burley's first appointed counsel filed several unopposed motions for continuance. Most were form motions that included a section titled "statement of defendant," which was uniformly left blank as to whether Burley objected to a continuance. ***See*** Motions for Continuance, 11/5/19, 1/27/20, 5/26/20, 9/8/20, 12/4/20, 12/31/20, 2/2/21, 5/25/21, 6/28/21, 9/30/21, 1/3/22 (indicating only that Burley was "incarcerated"), 3/7/22, 9/6/22; ***see also*** Motion to Continue Trial List, 6/10/22. In several *pro se* documents, however, Burley expressed speedy trial concerns. ***See*** Supplemental Motion for Immediate Relief, 7/27/20, at 4 ¶9; Motion in Letter, 10/25/21, at 2; Document, 10/18/21, at 1–2; Motion for Waiver/Modification of Pa.R.Crim.P. 576(4), at 4. Burley wrote that he was "not advised by counsel of any of the implications and consequences of those motions, which [he] most certainly oppose[d] and did not request." Document, 10/25/21. Burley mailed a *pro se* motion for dismissal pursuant to Rule 600 on December 8, 2021. Because Burley was represented by counsel, the trial court ordered

that the motion be filed and copied to counsel, who would take any action counsel deemed appropriate.

On November 6, 2021, Burley moved to withdraw appointed counsel and proceed *pro se*. Counsel moved to withdraw August 8, 2022. On September 20, 2022, the trial court granted counsel's withdrawal and appointed new counsel ("trial counsel"). Burley indicated that he wished to proceed *pro se*; counsel filed an appropriate motion. After a status conference, the trial court ordered that counsel's motion be deemed withdrawn.

On May 11, 2023, trial counsel filed an omnibus pre-trial motion, which consisted of:

- an expanded motion to dismiss pursuant to Rule 600;

- a motion for change of venue/venire, attaching over a hundred pages of news items reflecting the publicity of Burley's case;

- an expanded motion for recusal of the trial judge;

- an expanded motion to disqualify the district attorney; and

- a motion to compel discovery.

The trial court ultimately denied the Rule 600, recusal, and disqualification motions. Based on Burley's request at the hearing, the trial court deemed the motion for change of venue/venire to be withdrawn. The court granted the discovery motion in part.

Trial counsel filed a supplemental omnibus pre-trial motion on August 11, 2023. In addition to a motion to continue trial, the supplemental omnibus motion included:

- a motion to suppress evidence;

- an expanded motion to dismiss based on pretrial publicity, government interference, and prosecutorial and judicial misconduct;

- an expanded petition to appoint an expert witness;

- a petition for writ of *habeas corpus*; and

- an expanded motion *in limine* to preclude a forensic interview of two minor witnesses and for a psychological examination of them.

The trial court denied the motions on August 21, 2023. The case thereafter proceeded to jury selection and trial. Burley knowingly waived his right to counsel; trial counsel acted as standby counsel. The trial court recounted the facts from trial:

> In March of 2019, Maram Ford, formerly Maram Saada, met and began dating [Burley]. At that time, Ms. Ford had two sons, M.E.M., age 8, and M.M., age 7. On July 8, 2019, Ms. Ford was working at Arc Human Services group home until 9:30 p.m. Ms. Ford's children were in the care of [Burley] while she worked until 3:00 p.m. when they were placed in the care of their father, Mark Mason. Once her shift ended, Ms. Ford picked up her children from Mr. Mason's care and picked up [Burley] before traveling to Cascade Express gas station located on Cascade Street in New Castle, Pennsylvania, arriving there at 10:20 p.m. They were traveling in Ms. Ford's vehicle and she asked [Burley] to pump gas. When [Burley] refused to do so, they began to argue. After leaving Cascade Express, the original plan was to return to Ms. Ford's residence but, because they continued to argue, she decided to take [Burley] to his sister's house.

At one point, [Burley] grabbed Ms. Ford's cell phone and would not return it, which prompted Ms. Ford to grab [Burley's] cell phone in an attempt to secure the return of her phone. However, Ms. Ford threw [Burley's] cell phone out of the car window. [Burley] then choked Ms. Ford, … bit her in the right eye and punched her left eye. Ms. Ford drove to the New Castle Fire Department because the door was usually open and she believed fire department personnel could assist her. Upon arriving at the Fire Department, Ms. Ford began blaring the horn of her vehicle and screaming for help. [Burley] removed Ms. Ford from the vehicle whereupon she was able to escape to the fire station. [Burley] got into the driver's seat of Ms. Ford's vehicle and [said, "I'm kidnapping the kids." He] drove away with Ms. Ford's children still located in the rear seats.

[Burley] drove the vehicle to a residence at 60 High Street, New Castle, Lawrence County, Pennsylvania. [Burley] forced M.E.M. and M.M. into the residence where there were two other juvenile males present, A.N. and T.N. A.N. testified he lived at 60 High Street with his mother and his brother, T.N. He was in his bedroom playing a video game online with a friend when T.N. interrupted and announced a man entered the home. A.N. went downstairs and saw M.E.M. and M.M. [He did not know them] at the time but later learned their identities. He also observed [Burley], whom he was acquainted with through his mother, pacing around. [Burley] walked up to A.N. while holding a gun and asked where the magazine for the firearm was located. [Burley] then went frantically searching for the magazine but was unsuccessful in locating it. At that time, M.E.M. and M.M. were crying with M.E.M. crying the loudest. [Burley] grabbed M.E.M. and began stabbing him with a pink camouflage knife until M.E.M. was no longer making a sound. [Burley] repeatedly said, "Die, die, die!" A.N. then pushed M.M. out of the front door before grabbing T.N. and leaving through the back door. A.N. described [Burley] as wearing black pants and a red hat.

In the early morning hours of July 9, 2019, Trooper Michael Pickard of the Pennsylvania State Police received a call to assist a homicide investigation at 60 High Street. Upon his arrival at that location, Trooper Pickard documented the exterior of the residence then performed a methodical walkthrough of the scene which included taking notes of his observations and capturing photographs. In total, Trooper Pickard took 224 photographs of the exterior and interior of the residence. Trooper Pickard also placed evidence markers depicting items of potential evidentiary

value which included blood on a handrail attached to the rear steps, various shoe prints in blood on the kitchen floor, a live bullet found in the kitchen and a pistol discovered between a cabinet [and a] stove in the kitchen. Trooper Pickard observed M.E.M.'s body with obvious stab wounds and a towel was placed over M.E.M.'s chest.

Trooper David Naberezny, who is a member of the Criminal Investigations Unit of the Pennsylvania State Police, received a call in the early morning hours of July 9, 2019, from his supervisor informing him of a homicide involving an 8-year-old child at 60 High Street. He reported to Union Township Police Department where M.M., A.N. and T.N. were present. Trooper Naberezny was informed there was a dispute between Ms. Ford and [Burley] and [Burley] left in Ms. Ford's vehicle with her children still inside shortly before there were reports of a stabbing at 60 High Street. After short interviews with M.M., A.N. and T.N., it was determined [Burley] was the person who committed the homicide. Charges were filed against [Burley] on July 9, 2019, and an arrest warrant was issued. [Burley] was taken into custody by United States Marshals in Youngstown, Ohio, within 24 hours as a result of an anonymous tip concerning [Burley's] location. Trooper Naberezny and Trooper Max Deluca traveled to Ohio to retrieve [Burley] and transport him to Lawrence County. They also executed a body search warrant for DNA, fingernail clippings and photographs of [Burley]. The troopers also seized [Burley's] clothing at that time which included a red hat, a black polo tee shirt, black pants, underwear, socks and red Nike brand shoes.

M.E.M.'s body was taken to Beaver Valley Medical Center where an autopsy was conducted by Dr. Todd Luckasevic. When conducting an external examination, Dr. Luckasevic observed M.E.M.'s clothing was covered in blood and he noticed stab wounds to M.E.M.'s hands which indicated [M.E.M.] was attempting to defend himself. Dr. Luckasevic determined M.E.M. suffered a total of 127 stab wounds. M.E.M. had 31 stab wounds to the anterior and posterior neck with maximum depths of three inches; 30 stab wounds to his chest and shoulders with maximum depths of two inches; 35 stab wounds to his back and shoulders with maximum penetration of two inches; 31 stab wounds to his ears, cheeks, chin and occipital scalp with maximum penetration of one inch and 4 incised wounds to his neck with maximum penetration of one inch. Dr. Luckasevic also discovered 15 defensive incised wounds to M.E.M.'s hands. Ultimately, Dr.

Luckasevic opined M.E.M. died as a result of multiple incised stab wounds of the neck.

Jillian Scola, who is employed by the Pennsylvania State Police forensic DNA division, performed DNA analysis on various items provided by law enforcement in this case. Those items were compared to two buccal swabs taken from [Burley] and a dried blood sample from M.E.M. A sample provided from [Burley's] shoe lacked a sufficient quantity of DNA to make a comparison. However, a bloodstain taken from the tongue of the left Nike shoe belonging to [Burley] matched the DNA profile of M.E.M. A sample from a bloodstain on [Burley's] upper right left portion of his pants contained a mixture of two individuals and neither M.E.M. nor [Burley] could be excluded as potential contributors. A bloodstain on the lower left leg of the pair of [Burley's] sweatpants matched the DNA profile of M.E.M.

Trial Court Opinion, 5/9/24, at 2–6.

The trial court denied Burley's request to examine the district attorney. Burley elected to testify. In a colloquy, Burley acknowledged that he would be subject to cross-examination by the district attorney. The court told Burley that it was the district attorney's choice who would cross-examine him.

Burley began by describing the circumstances of his 1999 conviction for murder and his release on parole. He testified about his relationship with Ms. Ford and the events of July 8, 2019. Burley related that when Ms. Ford threw the cell phone out the window, he exited the car, and Ms. Ford drove away. He stated that he walked to his sister's house, then drove with another woman to Ohio.

The district attorney began to cross-examine Burley, starting with the 1999 murder conviction:

Q     Mr. Burley, you're a convicted killer, right?

A    In reference to a homicide in 1999, when I was 22 years old, the one I just testified when I went down there with a pistol cuz my cousin was in trouble.  Facts.

\* \* \*

Q    Mr. Burley, back to my initial question.  You are a convicted murderer.

A    Third degree for an incident down on the west side.

Q    Yes.  And that --

A    When I was 22 years old.

Q    Yes.  And that incident was where you were robbing a victim of $25 and then for no reason, you shot Mr. John Hawkins to death.

A    Absolutely not.  We can't comment on that.  This case don't got no bearings on that --

Q    We couldn't --

A    You going into details.

Q    We couldn't until you opened the door --

A    You can't, you going into details.

Q    -- and start --

N.T., Trial, 8/25/23, at 77–80.

Burley then invoked his right against self-incrimination.  The trial court then instructed the jury to disregard his testimony.

A    If you want to play these games, right, I exercise my Fifth Amendment right to remain silent.  You got an interest in the outcome of this case.  You and the judge is working together.  Let's deal with the facts. You a co-defendant with this judge right here.  That's why he told you all he didn't want her to answer you all questions, he standing up there objection, she got this, she got HIPAA rules, tell the truth.  That was your co-defendant on the stand.

\* \* \*

- 8 -

Q      Are you refusing to answer, sir, is all I want to know.

A      Right to remain silent.  Fifth amendment.

Q      Why did you kill [M.E.M.]?

A      (No response.)

Q      Come on, let me hear you say it.

A      Right to remain silent.  He got an interest in the outcome of this case.  I'm not answering his questions.  He got an interest and so do you.  You all co-defendant.

*      *      *

THE COURT: Okay, Mr. Burley, I will just tell you this.  Since you're refusing to subject yourself to cross examination --

MR. BURLEY: I'm not answering his questions.

THE COURT: Okay.

MR. BURLEY: Call somebody from the Attorney General's Office.  Call Michelle Henry in here and I answer her questions.

THE COURT: I just --

MR. BURLEY: This the last thing I'm telling you.  I'm not answering his questions.  When I exercise this right to remain silent and I say silent, I'm going silent.  That's it.  He's lying to that jury.

THE COURT: Then the jury --

MR. BURLEY: I exercise my right to remain silent.  Period.

THE COURT: -- is instructed to disregard your testimony.  Your direct examination is stricken.

*Id.* at 80–82.

The jury found Burley guilty.  On September 19, 2023, the trial court sentenced Burley to two consecutive terms of life imprisonment for murder and a consecutive term of one to two years for simple assault.  Burley filed *pro se* post-sentence motions on September 29, 2023.  The trial court

- 9 -

scheduled a hearing and appointed post-trial counsel, who filed supplemental post-sentence motions. The trial court denied all post-sentence motions.

Burley timely appealed. Burley and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925. This Court remanded for the trial court to determine if Burley wished to proceed *pro se.* The trial court found that Burley validly waived his right to counsel on appeal. Burley filed an amended concise statement of errors complained of on appeal, and the trial court entered a supplemental opinion.

As a procedural matter, "we note with extreme displeasure" that the Commonwealth failed to file an appellate brief. ***Commonwealth v. Blango***, 327 A.3d 670, 673 (Pa. Super. 2024). We remind the Commonwealth of this obligation.

Burley presents nine issues for review:

I. Was [Burley] deprived of his fundamental Due process rights and an independent Judicial judgment that there was sufficient evidence to require [Burley] to stand trial?

II. Was [Burley] deprived of his State and Federal Constitutional rights to a fair and impartial tribunal / Judge and fair trial gvaranteed by the Fourteenth Amendment to the United States constitution when the presiding Judge failed to recuse himself despite having a direct, personal, substantial, and financial interest in the outcome of [Burley's] case, trial, and appeal where an actual conflict of interest occurred before trial?

III. Was [Burley] deprived of a fair trial and prosecutor as gvaranteed by the Fourteenth Amendment of the United States Constitution when the Commonwealth Attorney has direct, personal, substantial and financial interest in the outcome of [Burley's] case, trial. and appeal where an actual conflict of interest occurred before trial where he is a

co-defendant with the judge in a Federal Action brought by [Burley] before trial?

IV. Did the trial Court err by failing to dismiss the case against [Burley] for the Commonwealth's failure to commence the trial in a speedy manner Violating [Burley's] speedy trial rights as required by the Sixth and Fourteenth Amendments of the United States Constitution, Article 1, section 9 of the Pennsylvania Constitution and Pa.R.Crim.P. 600?

V. Did the trial court err in failing to appoint the expert witnesses requested by [Burley] before trial, Violating [Burley's] procedural due process rights to present competent evidence in his defense?

VI. Did the trial court err in failing to dismiss the case against [Burley] due to prejudicial pretrial publicity and government interference in the case against [Burley] on account of the "Markies Law Movement" Where prejudice is presumed?

VII. Did the Commonwealth Attorney Violate [Burley's] due process rights by deliberately withholding evidence and fabricating false evidence against [Burley] - violating [Burley's] right to a fair trial as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution?

VIII. Did the trial court err for striking [Burley's] Alibi testimony when the Commonwealth's Attorney referred to [Burley] during trial as a convicted killer and Murderer accusing [Burley] of shooting John Hawkins to death where [Burley] did not shoot John Hawkins at all - let alone to death - in cases unrelated to [Burley's] trial, and so [Burley] exercised his fifth Amendment rights?

[IX.] Did the trial court err for denying [Burley's] motion in Limine prior to trial since [Burley] had not been identified by any commonwealth witness and identity is an element of the offenses charged and does not fall under any exception to Hearsay, neither the tender years Hearsay act or otherwise. Therefore, depriving [Burley] of his Sixth Amendment right to confront his accusers before trial?

Burley's Brief at 4–5 (spelling and capitalization as in original).

- 11 -

In Burley's first issue, he claims that the use of hearsay to prove his identity at his preliminary hearing violated his due process rights. In his ninth issue, he asserts that the trial court erred in denying his pretrial *habeas corpus* motion for this reason. Burley observes that this is his first opportunity for appellate review as of right from the trial court's ruling.

The Supreme Court of Pennsylvania explained that Rule 542 of the Pennsylvania Rules of Criminal Procedure "does not permit hearsay evidence alone to establish all elements of all crimes for purposes of establishing a prima facie case at a defendant's preliminary hearing. **Commonwealth v. McClelland**, 233 A.3d 717, 734 (Pa. 2020). More recently, the court held "that inadmissible hearsay alone may not be used to prove a prima facie case as to the defendant's identity" at a preliminary hearing. **Commonwealth v. Harris**, 315 A.3d 26, 37 (Pa. 2024).[3]

Here, rather than determine whether the hearsay at Burley's preliminary hearing was inadmissible, we observe that Burley was subsequently tried before a jury and convicted. This cured any defect in Burley's preliminary hearing, including any violation of **McClelland**. **Commonwealth v. Rivera**, 255 A.3d 497, 503–04 (Pa. Super. 2021), *reversed on other grounds*, 296

---

[3] Of the six justices who decided **Harris**, two joined the court's opinion in full and two dissented. The other two justices joined only a portion of the court's analysis, agreeing that Rule 542 "does not allow the Commonwealth to satisfy its prima facie burden to establish the defendant's identity at a preliminary hearing solely through the use of evidence deemed inadmissible pursuant to the rule against hearsay (Pa.R.E. 802)." **Harris**, 315 A.3d at 38 (Donohue, J., concurring).

A.3d 1141 (Pa. 2023). If the Commonwealth introduces sufficient evidence of a defendant's guilt at trial, "then any deficiency in the presentation before the district justice [is] harmless." **Commonwealth v. Hess**, 414 A.2d 1043, 1048 (Pa. 1980). The Commonwealth's trial case against Burley included admissible testimony that Burley was the perpetrator of the charged crimes. Therefore, Burley's first and ninth issues afford him no relief.

Burley's second and third issues arise from the participation of the trial judge and the district attorney in Burley's case after Burley named both as defendants in a civil lawsuit. At the hearing on his omnibus pre-trial motion, Burley explained that he filed a *pro se* federal action against twelve individuals including the judge and prosecutor.

The federal district court stayed the civil case pending resolution of the criminal case now before this Court. **Burley v. Parra**, 2021 WL 4594674 (W.D. Pa. Oct. 6, 2021). That court explained that the operative complaint alleges constitutional torts under 42 U.S.C. § 1983, including claims related to Burley's conditions of confinement as well as claims "related to [Burley's] ongoing state criminal proceeding." **Id.** at *2. Burley alleged the judge and district attorney were "affirmatively linked" to a county jail mailroom employee who interfered with his legal mail, and he claimed malicious prosecution and defamation by the district attorney. **Id.** The federal court determined a stay was appropriate under **Heck v. Humphrey**, 512 U.S. 477 (1994), because Burley was not yet convicted, "and some of his civil claims are closely related to his criminal proceedings." **Id.** at *4. Furthermore, the

district court cited the abstention doctrine of *Younger v. Harris*, 401 U.S. 37 (1971), in ordering a stay. *Id.* at \*4–5.

Burley maintains on appeal that the circumstances of his civil case required the recusal of the trial judge and the disqualification of the district attorney from his criminal case. Burley argues that both have an actual conflict of interest as named parties in his civil case; as they argued to the federal court, Burley's civil and criminal cases are "inextricably intertwined." Furthermore, Burley identifies the judge and district attorney as fact witnesses in his civil case.

We review the denial of a motion to recuse for an abuse of discretion. *V.L.-P. v. S.R.D.*, 288 A.3d 502, 523 (Pa. Super. 2023).

> Indeed, our review of a trial court's denial of a motion to recuse is exceptionally deferential. We extend extreme deference to a trial court's decision not to recuse. We recognize that our trial judges are honorable, fair and competent, and although we employ an abuse of discretion standard, we do so recognizing that the judge himself is best qualified to gauge his ability to preside impartially. Hence, a trial judge should grant the motion to recuse only if a doubt exists as to his or her ability to preside impartially or if impartiality can be reasonably questioned.

*Id.* (quoting *Interest of D.R.*, 216 A.3d 286, 292 (Pa. Super. 2019)). Under this standard, the Supreme Court of Pennsylvania found that a trial judge did not abuse his discretion in failing to recuse when he was a member of the county prison board when the criminal defendant filed suit against the prison. *Commonwealth v. Blakeney*, 946 A.2d 645, 661–62 (Pa. 2008).

Likewise, we review the denial of a motion to disqualify a district attorney for an abuse of discretion. *Commonwealth v. Sims*, 799 A.2d 853,

856 (Pa. Super. 2002). A disqualifying conflict of interest exists when a district attorney has a "direct financial interest" or a "non-economic, personal interest" in the outcome of a prosecution. *Commonwealth v. Lutes*, 793 A.2d 949, 956 (Pa. Super. 2002) (citing *Commonwealth v. Eskridge*, 604 A.2d 700 (Pa. 1992), and *Commonwealth v. Balenger*, 704 A.2d 1385 (Pa. Super. 1997)). However, this Court has held that a district attorney has no conflict of interest in prosecuting a criminal case just because the defendant files civil actions against him arising from the criminal case. *Commonwealth v. Stafford*, 749 A.2d 489, 493–95 (Pa. Super. 2000); *see Commonwealth v. Brown*, 141 A.3d 491, 497 (Pa. Super. 2016) ("[T]he fact that the defendant alleges misconduct in prior proceedings cannot entitle him to disqualify counsel for the State." (quoting *New Jersey v. Marshall*, 690 A.2d 1, 99 (N.J. 1997))).

Here, the trial court addressed these matters in an order after a hearing on Burley's omnibus pre-trial motions.

> The fact that the undersigned judge is a member of the Lawrence County Prison Board, which is required of him by statute as president judge and the fact that [Burley] has filed a *pro se* federal civil action against a number of defendants, including the undersigned judge, is not by itself a basis for recusal. The undersigned judge has made a conscientious determination of his ability to assess the case in an impartial manner, free of personal bias or interest in the outcome, and the undersigned judge finds that he is fully able to do so, having no personal bias against [Burley] and is fully able to assess this case in an impartial manner. The court also finds that no evidence has been presented which would justify a finding that the continued involvement of the undersigned judge creates any appearance of impropriety or would tend to undermine public confidence in the judiciary.

[The trial court] finds that there exists no actual conflict of interest relative to District Attorney Joshua Lamancusa. The mere fact that [Burley] has filed a *pro se* federal civil action against a number of public officials, including the District Attorney, and the fact that the District Attorney is a member of the Lawrence County Prison Board by statute, does not raise a conflict of interest in and of itself.

Order, 6/1/23, at 1–2.

We discern no abuse of discretion. Like in **Blakeney** and **Stafford**, the civil suit naming the judge and district attorney as defendants did not create a conflict.[4] Burley's second and third issues fail.

In Burley's fourth issue, he challenges the denial of his motion to dismiss pursuant to Pennsylvania Rule of Criminal Procedure 600. Although Burley's former counsel moved numerous times to continue his case, Burley maintains that he personally never waived his rule-based right to a speedy trial.

We review Rule 600 issues for an abuse of discretion. **Commonwealth v. Faison**, 297 A.3d 810, 821 (Pa. Super. 2023). Rule 600 generally requires trial in a case like Burley's to "commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). The rule instructs the method of computing time under paragraph (A):

periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise

_____

[4] As to the district attorney, we note that the relevant Rule of Professional Conduct generally prohibits a lawyer from acting as an "advocate at a trial in which the lawyer is likely to be a necessary witness." Pa.R.P.C. 3.7. Here, Burley identifies the district attorney as a witness in the civil suit currently pending in federal court. The district attorney is not, however, a witness in Burley's criminal case. This rule, then, does not prohibit the district attorney from representing the Commonwealth in Burley's criminal case in state court.

due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

Pa.R.Crim.P. 600(C)(1). Thus, "for delay to count toward the 365-day deadline: (1) the delay must be caused by the Commonwealth; **and** (2) the Commonwealth must have failed to exercise due diligence." *Commonwealth v. Lear*, 325 A.3d 552, 560 (Pa. 2024) (quoting *Commonwealth v. Johnson*, 289 A.3d 959, 982 (Pa. 2023)).

Interpreting similar language in the predecessor to Rule 600, we held that a defendant's claim that he did not agree to continuances requested by counsel did not require the continuances to be included. *Commonwealth v. Henry*, 470 A.2d 581, 584 (Pa. Super. 1983). Such arguments "cannot be made the basis for finding a violation" of the rule. *Id.* The Supreme Court observed that a continuance request rests "within the reasonable purview of counsel," such that counsel may move to continue trial on behalf of a client. *Commonwealth v. Wells*, 521 A.2d 1388, 1391–92 (Pa. 1987).

Here, the trial court relied on *Henry* and *Wells* to find that Rule 600 does not require the defendant's consent to a continuance on the record. We agree with the trial court's decision not to include the continuances in the time computation for Rule 600(A). Regardless of Burley's lack of consent, these delays in trial were caused by defense counsel moving for continuances, not "by the Commonwealth." Pa.R.Crim.P. 600(C)(1). Therefore, the trial court did not abuse its discretion when it denied Burley's Rule 600 motion. Burley's fourth issue fails.

- 17 -

In Burley's fifth issue, he challenges the trial court's denial of his motion to appoint expert witnesses in the fields of D.N.A., blood spatter, and psychology. He states that this amounted to a denial of his due process rights to present competent evidence in his defense.

"The decision to appoint an expert witness is within the sound discretion of the trial court and will not be disturbed except for a clear abuse of that discretion. There is no obligation on the part of the Commonwealth to pay for the services of an expert." ***Commonwealth v. Carter***, 643 A.2d 61, 73 (Pa. 1994) (citations omitted).

Here, the trial court rejected Burley's requests as they were made shortly before trial and Burley failed to provide a factual basis for these requests. In his brief, Burley does not explain how the experts he requested would aid in his defense. Because Burley has not demonstrated on appeal how the trial court abused its discretion, Burley's fifth issue fails.

In his sixth issue, Burley challenges the trial court's failure to dismiss the case given the significant pretrial publicity, as well as government interference related to proposed legislation named after the victim.

Before trial, Burley filed and withdrew a motion for a change of venue or venire. In his later supplemental omnibus motion, Burley moved for outright dismissal, incorporating the allegations he raised in a *pro se* filing. He stated:

> 17. Since the filing of charges against [Burley] more than three years ago, the case has been exposed to an incessant barrage of

coverage in all media, including radio, television, and newspapers that has reached virtually every household in Lawrence County.

18. In his *pro se* filing, [Burley] asserts that this prejudicial pretrial publicity has reached every household in Pennsylvania [as well as the legislature] and that pretrial prejudice is presumed and his right to a fair trial has been tainted because there would be no jury in the Commonwealth of Pennsylvania that has not heard about this case.

19. [Burley] also asserts that there was government interference, that he was punished and subject to rehabilitation, and that there was prosecutorial and judicial misconduct.

Supplemental Omnibus Pre-Trial Motion, 8/11/23, at 4.

The trial court denied Burley's motion to dismiss, reasoning that "the remedy for any alleged prejudicial pre-trial publicity is not dismissal, but change of venue . . . ." Order, 8/1/23, at 1. The court observed that Burley withdrew his motion for a change of venue or venire, and the Lawrence County jury pool provided a sufficient number of jurors "who were not influenced by any pretrial publicity to provide [Burley] with a fair and impartial jury for his trial." Opinion, 9/10/24, at 8.

On appeal, Burley argues that he did not need to show that the extreme publicity resulted in actual prejudice against him. *See Commonwealth v. Pursell*, 495 A.2d 183, 223 (Pa. 1985).

We discern no error by the trial court. As the court observed, the proper remedy for prejudice or pre-trial publicity is the transfer of proceedings to another judicial district. *See generally Commonwealth v. Gross*, 101 A.3d 28, 33 (Pa. 2014). Burley has not provided any authority to support that any amount of pretrial prejudice would entitle a defendant to dismissal of charges,

- 19 -

and we have found none. Furthermore, the results of *voir dire* can disprove any presumptive prejudice. **See Commonwealth v. Rucci**, 670 A.2d 1129, 1141 (Pa. 1996). Here, the trial court and parties questioned the prospective jurors who had possible knowledge of the incident; three were excused for cause, and the rest indicated they could be fair and impartial. N.T., 8/21/23, at 33–54. The record thus refutes the existence of presumptive prejudice in the local venire. Burley's sixth issue fails.

Burley's seventh issue involves two instances of alleged prosecutorial misconduct. Burley claims the district attorney withheld a pair of bloody size 11 shoes and a pair of bloody socks, in violation of **Brady v. Maryland**, 373 U.S. 83 (1963). He also claims the district attorney failed to correct Trooper Naberezny's false testimony about the date Burley's clothes were brought from Ohio to Pennsylvania, in violation of **Napue v. Illinois**, 360 U.S. 264 (1959).

The trial court observed that Burley did not move for a mistrial based on the alleged misconduct by the prosecution and therefore waived his claim. **See Commonwealth v. Sasse**, 921 A.2d 1229, 1238 (Pa. Super. 2007). We agree. "In order to preserve a claim of prosecutorial misconduct for appeal, a defendant must make an objection *and move for a mistrial*." **Id.** (emphasis added). Here, rather than move for a mistrial, Burley questioned witnesses and argued to the jury about his issues with the evidence presented by the Commonwealth.

Burley's *Brady* and *Napue* claims would thus fail on the merits based on Burley's own advocacy at trial. Burley ensured that the jury was aware of any defects in the shoes, socks, or chain of custody. Even though they were aware of any Commonwealth misconduct, the jury still found Burley guilty. Thus, Burley cannot prove the prejudice required for successful *Brady* or *Napue* claims. *See Commonwealth v. Conforti*, 303 A.3d 715, 730 (Pa. 2023) (requiring proof for a *Brady* claim of a "reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different"); *see Commonwealth v. Romansky*, 702 A.2d 1064, 1068 (Pa. Super. 1997) (explaining that for a *Napue* claim, testimony must be materially false, such that "it could in any reasonable likelihood have influenced the verdict"). Burley waived his seventh issue, which would fail on the merits even if he had preserved it.

Burley's eighth issue challenges the trial court's order striking his testimony. He argues that this decision was an improper response to his invocation of his right against self-incrimination during examination by the district attorney.

The trial court explained that it struck Burley's testimony because "he refused to permit himself to be cross-examined." Opinion, 9/10/24, at 10. The record supports the trial court's reasoning. Burley testified about his prior murder conviction and release on parole. However, he ultimately refused to answer the district attorney's questions about these topics. Instead, Burley

categorically invoked his right to remain silent, stating, "I exercise my right to remain silent.  Period."

The trial court did not abuse its discretion by striking Burley's testimony after it became clear that Burley prevented any meaningful cross-examination by the Commonwealth.  As the court observed, a defendant who elects to testify waives his right against self-incrimination.  *See Commonwealth v. Molina*, 104 A.3d 430, 446–47 (Pa. 2014).  While Burley stated that he was willing to answer questions from a different prosecutor, the Commonwealth was not required to substitute its examiner.  Persuasive authority illustrates that a trial court acts within its discretion by striking testimony from a witness who refuses cross-examination.  *United States v. McGlory*, 968 F.2d 309, 344 (3d Cir. 1992); *United States v. Morgan*, 757 F.2d 1074, 1077 (10th Cir. 1985).  The trial court's decision to strike Burley's testimony given his refusal to answer the district attorney's questions on cross-examination was not an abuse of discretion.  Burley's eighth issue fails.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  6/25/2025